In the Matter of LONNIE McLUCAS, Appellant, *v.* RUSSELL G. OSWALD et al., Constituting the New York State Division of Parole, Respondents.

Third Department, January 17, 1973.

312

*Pollack & Singer* (*Richard M. Asche* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General* (*Frederick R. Walsh, Ruth Kessler Toch* and *Jean M. Coon* of counsel), for respondents.

*Per Curiam.* This is an appeal from a judgment of the Supreme Court at Special Term, entered September 2, 1971 in Albany County, which denied appellant's application pursuant to article 78 of the CPLR, seeking a judgment mandating the withdrawal of a warrant for his arrest and enjoining respondents from attempting to have executed any warrant arising out of any alleged parole violation by appellant.

On December 10, 1963, appellant was sentenced in New York to a term of 3½ to 7 years. He was paroled to North Carolina by the New York State Parole Board on July 13, 1967. Appellant was declared delinquent by the board on February 28, 1969, and a warrant for his detainer and retaking was forwarded to North Carolina authorities on March 12, 1969. Appellant was

not taken into custody by North Carolina, but on April 25, 1969, he was arrested in Connecticut on unrelated charges.

On May 7, 1969, the New York State Parole Board sent a certified copy of the warrant to the Connecticut Department of Correction and the New Haven police to be lodged as a detainer, with the understanding that the warrant would not interfere in any way with the Connecticut charges. The board further requested the Connecticut Department of Correction to investigate the details surrounding the Connecticut arrest and to secure statements as to appellant's reasons for absconding from North Carolina and as to where he went after absconding.

Subsequently, appellant did not appear on the adjourned date regarding the charges for the April 25 arrest, and on June 5, 1969, Connecticut authorities informed respondents that appellant had absconded. On September 6, 1969, respondents wrote the Connecticut Board of Parole, attaching a copy of a report from North Carolina authorities advising that appellant was in the custody of the United States Marshal in Hartford, Connecticut, and requested that a certified copy of the parole violation warrant be filed with the Marshal's office or with the New Haven police, in the event they took custody, and that the warrant be lodged as a detainer. Respondents were informed by Connecticut authorities in September, 1969, that appellant had been arrested on June 11, 1969 on a Connecticut bench warrant issued May 27, 1969 on other unrelated charges and that the New York parole violation warrant was filed with the New Haven County State's Attorney's Office.

Appellant was convicted in Connecticut of conspiracy to commit murder and was sentenced in September, 1970, to a term of 12 to 15 years. On October 7, 1970, the Connecticut Probation Department informed respondents that the prison authorities where the warrant was lodged had been contacted and would give respondents 60 days' notice in advance of releasing appellant.

On May 25, 1971, bail was set for appellant pending appeal in Connecticut. Said appeal is still pending, and appellant contends that his freedom is prevented because of an illegal detainer filed by respondents upon which a Connecticut warrant was issued.

The question to be determined on this appeal is whether the procedure employed by respondents in the parole revocation proceeding comports with due process requirements. *Morrissey* v. *Brewer* (408 U. S. 471) decided on June 29, 1972, held that, though parole revocation does not call for the full panoply of rights due a defendant in a criminal proceeding, a parolee's

liberty involves significant values within the protection of the due process clause of the Fourteenth Amendment, and termination of that liberty requires an informal hearing to give assurances that the finding of a parole violation is based on verified facts to support the revocation.

In the opinion, Mr. Chief Justice BURGER stated (p. 485): "There is typically a substantial time lag between the arrest and the eventual determination by the parole board whether parole should be revoked. Additionally, it may be that the parolee is arrested at a place distant from the state institution, to which he may be returned before the final decision is made concerning revocation. Given these factors, due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available. * * * Such an inquiry should be seen as in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable grounds to believe that the arrested parolee has committed acts which would constitute a violation of parole conditions."

*Morrissey* went on to hold that the parolee should receive prior notice of the inquiry, which is to be conducted by an impartial hearing officer, its purpose, and the alleged violations. The parolee may present relevant information and, absent security considerations, question adverse informants. The hearing officer shall digest the evidence on probable cause and state the reasons for holding the parolee for the parole board's decision, prior to which there must be the opportunity for a hearing, if desired by the parolee, to be tendered within a reasonable time after the parolee is taken into custody.

Prior to *Morrissey*, New York already had an established procedure to provide for the appearance of a parole violator before the board "as soon as practicable" to "explain the charges made against him. Such appearance shall be either at an institution under the jurisdiction of the state department of correction or at such other place as may be designated pursuant to rules and regulations of the board." (Correction Law, § 218.) Furthermore, New York is a party to the interstate compact for the supervision of parolees and probationers, the out-of-State incarceration amendment to which has been enacted as section 224-a of the Correction Law. Paragraph (e) of subdivision 1 of that section provides, in pertinent part: "The fact of incarceration or reincarceration in a receiving state [Connecticut] shall not deprive any person so incarcerated or reincar-

cerated of any rights which said person would have had if incarcerated or reincarcerated in an appropriate institution of the sending state [New York]; nor shall any agreement to submit to incarceration or reincarceration pursuant to the terms of this amendment be construed as a waiver of any rights which the prisoner would have had if he had been incarcerated or reincarcerated in any appropriate institution of the sending state, except that the hearing or hearings, if any, to which a parolee or probationer may be entitled, (prior to incarceration or reincarceration) by the laws of the sending state may be had before the appropriate judicial or administrative officers of the receiving state. In this event, said judicial and administrative officers shall act as agents of the sending state after consultation with appropriate officers of the sending state.''

Reading sections 218 and 224-a together and in conjunction with the *Morrissey* holding, we conclude that the proper procedure in a case such as this would include, after *Morrissey,* the granting by respondents to appellant his *Morrissey* hearings by employment of the procedure provided in paragraph (e) of subdivision 1 of section 224-a of the Correction Law, which is designed for just such a situation as this. The preliminary hearing should be granted as promptly as convenient after arrest and the revocation hearing should be tendered within a reasonable time after the parolee is taken into custody. Respondents argue that, pursuant to section 224 of the Correction Law, any hearing must necessarily be postponed until appellant is discharged from prosecution or from imprisonment in Connecticut. Section 224 is not the controlling statute; it merely prohibits New York's retaking appellant until the occurrence of either of the above-mentioned events. In no way does that section prevent the minimal due process hearings that should be accorded a parolee in another State. Indeed, were appellant to be unsuccessful in his Connecticut appeal, respondents' argument would permit the postponement of such hearings for years, an intolerable result.

Analogously to the right to a speedy trial, the right to a preliminary hearing as promptly as convenient after arrest and to a revocation hearing within a reasonable time after the parolee is taken into custody must be decided on an *ad hoc* basis, being necessarily relative and depending on the circumstances (cf. *Barker* v. *Wingo,* 407 U. S. 514, 530). Here, appellant was at least in part responsible for the delay in having an earlier adjudication of his alleged parole delinquency by his departure from North Carolina. During the period from September, 1969, when

respondents were notified by Connecticut that appellant had been arrested during the previous month of June, until April, 1971, when this proceeding was instituted, appellant was continuously in custody on other charges, having been sentenced on September 18, 1970 for a term of 12 to 15 years. Significantly, there is no claim by appellant that any witnesses have died or otherwise become unavailable because of the delay. Appellant's assertion in an affidavit supporting a motion for reargument that, had he been declared delinquent at a time closer in proximity to the alleged February 28, 1969 violation, he "would probably have been able to recall the names, dates and other factual information relative" to his defense is indefinite and conclusional. Weighing these elements and the fact that appellant stands convicted of the crime for which he was released on parole, and in view of the fact that *Morrissey* was decided after the institution of this proceeding we believe appellant is not entitled to outright relief. Furthermore, in *Morrissey*, it is stated that the basic requirements outlined therein are applicable to future revocations of parole.

The judgment should be affirmed, without costs, on condition that there be granted to appellant within 60 days from entry of the order hereon the right to a hearing to determine whether there is probable cause or reasonable grounds to believe that appellant committed acts which constituted a violation of his parole conditions and also an opportunity for a revocation hearing. In the event the right to such hearings is not granted to appellant by respondents or their agents within said time, the judgment should be reversed, on the law and the facts, without costs, and petition granted to the extent of requiring respondents to withdraw the warrant for the arrest of appellant.

Staley, Jr., J. P., Greenblott, Cooke, Sweeney and Reynolds, JJ., concur.

Judgment affirmed, without costs, on condition that there be granted to appellant within 60 days from entry of the order hereon the right to a hearing to determine whether there is probable cause or reasonable grounds to believe that appellant committed acts which constituted a violation of his parole conditions and also an opportunity for a revocation hearing. In the event the right to such hearings is not granted to appellant by respondents or their agents within said time, judgment reversed, on the law and the facts, without costs, and petition granted to the extent of requiring respondents to withdraw the warrant for the arrest of appellant.