In the Matter of the Claim of JOSEPH L. MULLINS, Respondent, v. STATE BOARD OF PAROLE, Appellant.

Third Department, February 7, 1974.

*Louis J. Lefkowitz, Attorney-General (Frederick R. Walsh, Jean M. Coon* and *Ruth Kessler Toch* of counsel), for appellant.

*David F. Kunz* for respondent.

KANE, J. This is an appeal from a judgment of the Supreme Court at Special Term, entered May 30, 1973 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, and directed the State Board of Parole to hold a hearing within 30 days from the entry of the judgment to determine whether petitioner has violated the conditions of his parole.

Petitioner was convicted of grand larceny, first degree in 1966 and received a sentence of 2½ to 10 years. He was paroled

in 1968 from Attica Correctional Facility to Cincinnati, Ohio. On August 30, 1971 he was arrested as a suspect in a bank robbery which occurred on July 20, 1971 in Cincinnati. On September 2, 1971 he confessed to an Ohio parole officer that he had committed the bank robbery and on September 9, 1971 was convicted of such robbery in the United States District Court and sentenced to prison for 20 years. Subsequently, he was transferred to a Federal Correctional Facility in Terre Haute, Indiana, where a parole detention warrant issued by appellant herein on October 9, 1971 was lodged against him. On November 5, 1971 petitioner was declared delinquent as of July 20, 1971, the date of the bank robbery.

Special Term granted petitioner's application to the extent that the State Board of Parole was directed to hold a parole revocation hearing within 30 days from the entry of its judgment.

This appeal ensued.

The judgment should be reversed and the petition dismissed. We find nothing in the applicable statutes or the decision of the Supreme Court in *Morrissey* v. *Brewer* (408 U. S. 471), which would mandate a prompt revocation hearing when a parolee is already serving a sentence of imprisonment following conviction for a new offense. *Morrissey* emphasized that the full panoply of due process rights attaching to criminal prosecutions was not meant to be applied to the parole process, and, that an inflexible structure for such rights should not be created to attach to parole matters. It should be remembered that the minimally acceptable due process rights for parolees announced in *Morrissey* sprung from factual situations in which the alleged delinquencies consisted of such items as operating an automobile without permission, failing to remain employed and like matters. Indeed, the court expressly stated (p. 490) that a parolee could not " relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime ".

It is against this background that we are called upon to interpret the language of former section 218 of the Correction Law that parole revocation hearings be conducted " as soon as practicable " (see Correction Law, § 212, subd. 7). *People ex rel. Maggio* v. *Casscles* (28 N Y 2d 415) aptly noted the distinction between technical violations of parole and more substantial deviations (such as conviction for a new offense) as the reason for declining to require that new revocation hearings be held in each and every case in conformity with its prior decision in *People ex rel. Menechino* v. *Warden* (27 N Y 2d

376). While no hearing has as yet been afforded the petitioner, we find the reasoning employed in *Maggio* to be applicable to this factual situation. Although this petitioner might have been able to offer reasons why, despite this new conviction, his parole should not be revoked, we fail to see how, absent such allegations, the timing of such a hearing could attain due process dimensions when he would not be free to relitigate the factual basis of that conviction.

Petitioner's reliance on *Matter of McLucas* v. *Oswald* (40 A D 2d 311, app. dsmd. 32 N Y 2d 761) is misplaced and its holding should be limited to the facts therein presented. McLucas' parole delinquency warrant was not based on his subsequent Connecticut conviction. Furthermore, bail had been set in Connecticut pending an appeal from that conviction. Consequently, it may fairly be said that the *only* basis for his continued incarceration was the pendency of New York's parole revocation process. Applying the *Maggio* reasoning to these situations would mean that parole revocation hearings should be conducted " as soon as practicable " for parolees held in or out of State whenever any underlying or independent basis for continued incarceration lapses *or* they can convincingly demonstrate that parole should not be revoked (despite a recent conviction) and that the mitigating evidence pointing to that conclusion would otherwise be lost through the passage of time during the term of the new sentence.

This rule would afford parolees a hearing whenever reasonably calculated to lead to their release and yet relieve the State from the considerable burden of conducting numerous hearings, often at great distance and expense, when they would have no effect on the ultimate custody status of parolees.

The judgment should be reversed, on the law and the facts, and the petition dismissed, without costs.

SWEENEY, J. (dissenting). I cannot accept the view of the majority that the standards of due process prescribed in *Morrissey* v. *Brewer* (408 U. S. 471) do not entitle the petitioner to a prompt parole revocation hearing. That a parolee cannot relitigate issues determined against him on conviction of another crime, as stated by the court in *Morrissey*, does not justify the conclusion that no revocation hearing whatsoever should be afforded in petitioner's factual situation. To require that a revocation hearing be held within a reasonable time after the parolee is taken into custody, as mandated by *Morrissey* in the case of all parolees, is not inconsistent with the language of former section 218 of the Correction Law, that the hearing

should be held " as soon as practicable." As held in *Morrissey* (p. 481) due process applies *in general* to all parole revocations. A delay of such revocation hearing until the parolee is discharged from imprisonment on the sentence he is serving in another jurisdiction does not, in my opinion, meet the minimal due process guarantees established by *Morrissey*. (*Matter of McLucas* v. *Oswald,* 40 A D 2d 311, app. dsmd. 32 N Y 2d 761.) The invidious distinction made by the majority in which a revocation hearing is conducted as soon as possible for those parolees held in or out of State whenever any basis for incarceration lapses, or when they can " convincingly demonstrate " that mitigating evidence pointing to the conclusion that parole should not be revoked would be lost while serving the new sentence, operates as an unconstitutional discrimination and lacks fundamental fairness.

In *Gagnon* v. *Scarpelli* (411 U. S. 778), a case decided after *Morrissey*, the Supreme Court first determined that due process mandates preliminary and final revocation hearings for a probationer, under the same conditions as specified in *Morrissey* in the case of a parolee. The court then dealt with the question as to whether an indigent probationer or parolee has a due process right to be represented by appointed counsel at a revocation hearing. It recognized that " in most cases, the probationer or parolee has been convicted of committing another crime or has admitted the charges against him." (p. 787.) It is also significant that the factual situation in *Gagnon* involved a probationer who was arrested for committing burglary. His probation was revoked on September 1, 1965, prior to the *Morrissey* holding, as is true in the instant case. The Supreme Court held in *Gagnon* that because the respondent was not afforded a preliminary hearing or a final hearing (also true here), the revocation of his probation did not meet the due process standards prescribed in *Morrissey*.

As for the burden imposed on the State of conducting numerous hearings, often at a great distance, in answer to this same argument made in *Gagnon*, the Supreme Court noted in a footnote that " some amount of disruption inevitably attends any new constitutional ruling." The court was confident, however, that modification of the Interstate Compact would remove the more serious hurdles to compliance with *Morrissey* (p. 782, n. 5). Paragraph (e) of subdivision 1 of section 224-a of the Correction Law provides that the hearing to which a parolee may be entitled by the laws of the sending State " may be had before the appropriate judicial and administrative officers of

the receiving state.'' Although the United States is not a party to the Interstate Compact for the supervision of parolees and probationers (Correction Law, §§ 224 and 224-a), an examination of the record herein reveals that it is possible for petitioner to be transferred to the Federal House of Detention in New York City where such revocation hearing can be conducted by the New York Board of Parole.

For these reasons, I dissent and vote to affirm.

STALEY, JR., J. P., GREENBLOTT and MAIN, JJ., concur with KANE, J.; SWEENEY, J., dissents and votes to affirm in an opinion.

Judgment reversed, on the law and the facts, and petition dismissed, without costs.