THE PEOPLE OF THE STATE OF NEW YORK ex rel. EUGENE DELROW, Appellant, v NEW YORK STATE DIVISION OF PAROLE et al., Respondents.

First Department, June 26, 1980

## APPEARANCES OF COUNSEL

*Richard Greenberg* of counsel *(Donald H. Zuckerman* and *William E. Hellerstein,* attorneys), for appellant.

*Edward J. Perry, Jr.,* of counsel *(Gerald Ryan* with him on ·the brief; *Robert Abrams, Attorney-General,* attorney), for respondents.

## OPINION OF THE COURT

BLOOM, J.

Relator is presently detained by the Warden of the New York City House of Detention for Men under a parole violation warrant. He contends that he was denied a preliminary revocation hearing within the time prescribed by law (Executive Law, § 259-i, subd 3, par [c], cls [i], [iv]), and, by consequence thereof his continued detention under the warrant is illegal. He brought this habeas corpus proceeding to secure his release. The habeas court denied his application and dismissed the proceeding. We affirm.

Relator was convicted in the Supreme Court, Kings County, of rape in the first degree, robbery in the third degree and assault. He was sentenced by that court on July 12, 1963 to three concurrent indeterminate terms of imprisonment, the longest of which was 20 years with a minimum term of not less than 10 years. On January 23, 1973 he was released on parole.

On March 12, 1974 relator was arrested in New York City under authority of an arrest warrant issued by the State of New Jersey and subsequently turned over to the New Jersey authorities. He was indicted in Bergen County for assault, battery and related charges. On April 8, 1974 the New York State Division of Parole issued the parole violation warrant here involved. On April 9, 1974 the parole violation warrant was lodged, as a detainer, with the New Jersey authorities.

Thereafter, relator went to trial on the New Jersey indictment. He was convicted and on July 12, 1974 he was sentenced to a term of imprisonment of from 10 to 15 years. On August 9, 1974, relator wrote to the New York State Division of Parole demanding resolution of his parole status so that the parole time owed by him could run concurrently with his New Jersey prison sentence. The Division of Parole responded on August 26, 1974, informing him that if and when he became available for return to this State the Board of Parole would evaluate his case and would then determine whether credit would be given to him on his New York sentence for time served while in New Jersey. In January, 1976 the Legal Aid Society, acting on behalf of relator and a number of other alleged New York State parole violators lodged in Rahway and the Leesburg State Prisons in New Jersey, repeated the request for immediate *final* parole revocation hearings. That request was not complied with.

On November 13, 1979 relator was paroled on his New Jersey conviction. The warrant theretofore lodged as a detainer was executed and relator was turned over to the New York authorities. On November 16, 1979 he was offered and waived his preliminary parole revocation hearing. This proceeding was thereafter instituted.

We must start with the premise that *Morrissey v Brewer* (408 US 471) accords constitutional status to parole violation hearings. It mandates that certain minimal due process rights be applied to them. Among the standards enumerated is the requirement that "[t]he revocation hearing must be tendered within a reasonable time *after the parolee is taken into custody" (Morrissey v Brewer, supra,* p 488; italics supplied). In conformity with the requirements laid down in *Morrissey (supra),* section 259-i of the Executive Law was enacted. It provides for two hearings where violation of parole is charged; a preliminary revocation hearing and a final revocation hearing. Section 259-i (subd 3, par [c], cl [i]) of the Executive Law specifies that "[w]ithin fifteen days *after the warrant* for retaking and temporary detention *has been executed,* the board of parole shall afford the alleged parole or conditional release violator a *preliminary* revocation hearing before a hearing officer designated by the board of parole. Such hearing officer shall not have had any prior supervisory involvement over the alleged violator". (Italics supplied.) Section 259-i (subd 3, par [c], cl [iv]) provides that "[t]he preliminary hearing shall be scheduled to take place no later than fifteen days *from the date of execution of the warrant.* The standard of proof at the preliminary hearing shall be probable cause to believe that the parolee or conditional releasee has violated one or more conditions of his parole or conditional release in an important respect. *Proof of conviction of a crime committed subsequent to release on parole or conditional release shall constitute probable cause* for the purposes of this section". (Italics supplied.)

A final revocation hearing, on the other hand, "shall be scheduled to be held within ninety days of the probable cause determination" (Executive Law, § 259-i, subd 3, par [f], cl [i]). The remaining clauses of paragraph (f) of subdivision 3 provide for the manner in which the final revocation hearing shall be conducted, the entitlement of the parolee or conditional releasee to notice of the charges and his right to counsel.

Section 259-i (subd 3, par [c], cls [i], [iv]) of the Executive Law are most explicit in noting that the preliminary hearing shall be held within 15 days after the warrant for temporary detention and retaking has been executed. Execution of the parole violation warrant takes place when a copy thereof is served upon the alleged parole violator and he is reduced to the custody of the authorities seeking his arrest (Moody v Daggett, 429 US 78). Here, the parole violation warrant lodged against relator was not executed until he was released on parole by New Jersey on November 13, 1979. Within three days thereafter he was offered, and waived, a preliminary revocation hearing. By the institution of this proceeding, he deferred the final revocation hearing.

As Moody v Daggett (429 US 78, supra) makes clear there are sound practical reasons which suggest themselves for deferring action upon the parole violation warrant until after completion of the intervening sentence. The action to be taken thereon by the Division of Parole "is uniquely a 'prediction as to the ability of the individual to live in society without committing antisocial acts.' Morrissey, supra, at 480. In making this prophesy, a parolee's institutional record can be perhaps one of the most significant factors. Forcing decision immediately after imprisonment would not only deprive the parole authority of this vital information, but since the other most salient factor would be the parolee's recent convictions * * * a decision to revoke parole would often be foreordained. Given the predictive nature of the hearing, it is appropriate that such hearing be held at the time at which prediction is both most relevant and most accurate—at the expiration of the parolee's intervening sentence" (Moody v Daggett, supra, p 89).

Accordingly, we hold, as we have held in People ex rel. Colt v Warden (76 AD2d 1042), decided without opinion simultaneously herewith, that relator was not deprived of his statutory or constitutional rights by withholding execution of the parole revocation warrant until he was paroled by the State of New Jersey.

It is argued that our brethren in the Second Department have taken a contrary view (Matter of Higgins v New York State Div. of Parole, 72 AD2d 583, mot for lv to app granted 48 NY2d 612). A close reading of that decision indicates that it readily is reconcilable with our holding. There, Higgins had been imprisoned in 1948. He was paroled in 1966. In 1970 a

parole violation warrant was lodged by reason of a California arrest. That warrant was never executed. In 1972 he was convicted in the Federal court of bank robbery. A parole violation warrant was lodged which was not executed until he was released by the Federal authorities. He was then returned to this State where the habeas corpus writ was sought. Based upon proof submitted by the warden of the Federal institution wherein he was incarcerated, that, upon request, he would have been transferred to the Federal Metropolitan Correctional Center "a location within the convenience and practical control of New York authorities" the Second Department held that a prompt "revocation hearing is required whenever a parolee is, or may be, brought within the convenient and practical control of the parole authorities" (*Matter of Higgins v New York State Div. of Parole, supra,* p 583).

In *Higgins (supra),* the parole revocation hearing was a practical possibility without the loss of Federal jurisdiction over the prisoner. Here, however, the hearing required a transfer of the relator to the New York authorities. This involved, necessarily, a loss of jurisdiction over the relator by New Jersey. Hence, we conclude that relator was not " 'subject to the convenience and practical control of the Parole Board' " (*People ex rel. Walsh v Vincent,* 40 NY2d 1049, 1050; see, also, *Matter of Higgins v New York State Div. of Parole,* 72 AD2d 583, *supra).*

Accordingly, the judgment of the Supreme Court, Bronx County (HECHT, J.), entered March 21, 1980, denying relator's application for a writ of habeas corpus and dismissing the proceeding is affirmed, without costs.

KUPFERMAN, J. P., BIRNS, FEIN and MARKEWICH, JJ., concur.

Judgment, Supreme Court, Bronx County, entered on March 21, 1980, affirmed, without costs and without disbursements.