Jasen, J.
(dissenting). The majority today holds that a New York parolee who is incarcerated in a sister State for a crime committed therein is within the convenience and practical control of the New York Board of Parole such that he must be given a preliminary parole revocation hearing within 15 days after a parole violation warrant has been delivered to the sister State authorities unless the Board of Parole can establish that the parolee is, in fact, beyond its control. In our view this ruling ignores the practical and legal difficulties inherent in the out-of-State supervision of parolees and places an unnecessary burden upon the Board of Parole. We, therefore, respectfully dissent.
In this case relator was convicted of assault in the first degree in December, 1973 and was sentenced to an indeterminate term of from 0 to 8 years of imprisonment for that offense. In December, 1976, he was paroled by the New York authorities only to be sent to New Jersey in compliance with a parole revocation detainer warrant lodged against him. He remained in custody in New Jersey until April, 1977 when that State paroled him. Upon his release, relator and his wife remained in New Jersey and parole authorities there agreed to supervise his New York parole. Relator remained at liberty until May, 1978 when he was arrested in New Jersey and charged with several crimes. He was eventually convicted of statutory rape and desertion and nonsupport. He was sentenced to a term of imprisonment and was transferred to a New Jersey State prison facility. On December 15, 1978, a New York parole violation warrant was lodged against relator at the New Jersey prison. On March 1, 1979, relator was again paroled by New Jersey. He was thereupon returned to New York in compliance with its parole warrant and was given a preliminary parole revocation hearing on March 16,1979, and a final parole revocation hearing on May 28, 1979. His parole was ultimately revoked.
A majority of this court is of the view that even though relator was incarcerated in New Jersey, the Board of Parole was obligated by statute to provide him with a prelimi *18 nary parole revocation hearing within 15 days of the transmittal of the New York parole warrant to the New Jersey authorities. The majority concludes that the State’s failure to afford relator such a hearing automatically entitles him to a return to parole status. We cannot agree.
In New York, a parolee is entitled by statute to a preliminary parole revocation hearing “within fifteen days after the warrant for retaking and temporary detention has been executed” against him. (Executive Law, § 259-i, subd 3, par [c], cl [i].) At that hearing, the sole issue to be ád~ dressed is whether there is probable cause to believe that the parolee has violated the conditions of his parole in an important respect. Proof of conviction of a crime constitutes such probable cause as a matter of law. (Executive Law, § 259-i, subd 3, par [c], cl [iv].) Thereafter, the parolee is entitled to a final parole revocation hearing within 90 days of the probable cause determination. (Executive Law, § 259-i, subd 3, par [f], cl [i].)
These statutes insure that a parolee who is accused of violating the conditions of his parole has a fair opportunity, within a reasonable time of the alleged violation, to be heard in opposition to the State’s attempt to once again deprive him of his liberty. (See, e.g., Morrissey v Brewer, 408 US 471.) Violation of these statutory rules, at least insofar as the 90-day time limit for a final parole revocation hearing is concerned, results in an automatic dismissal of parole violation charges and an automatic restoration to parole status. (People ex rel. Levy v Dalsheim, 66 AD2d 827, affd 48 NY2d 1019.)
However, the right to a hearing within these statutory time limits is not absolute. Indeed, there exist several statutory and judicially created conditions which must be met before a parolee’s right to a hearing arises. If one of these “exceptions” applies, the parolee has no right to a hearing so long as the situation creating the “exception” prevails.
One such exception, long recognized by New York law, is that an accused parole violator is not entitled to a parole revocation hearing unless and until he comes within the “convenience and practical control” of the Parole Board (See, e.g., People ex rel. Walsh v Vincent, 40 NY2d 1049; *19 Matter of Beattie v New York State Bd. of Parole, 39 NY2d 445.) A parolee has been held to be within such “convenience and practical control” when he is incarcerated in any New York State penal institution or any local facility run by a political subdivision of the State. (Id.) However, the question whether a parolee who is being held in a sister State institution is within such control is one which this court has not as yet addressed. Lower courts which have addressed the issue, although they have not been unanimous, have for the most part concluded that a parolee being held in an out-of-State prison is not within the convenience and practical control of the Parole Board. (See People ex rel. Pyclik v Smith, 78 AD2d 1008; People ex rel. Copeland v Smith, 78 AD2d 1008; People ex rel. Delrow v New York State Div. of Parole, 75 AD2d 324; but see Matter of McLucas v Oswald, 40 AD2d 311, app dsmd 32 NY2d 761.)[1] This conclusion was reached by the court below in this case.
The majority, however, holds that relator’s incarceration in New Jersey did not place him beyond the reach of the New York State Board of Parole. This holding is premised primarily upon the existence of a compact between New York and New Jersey (and all other States) which under certain circumstances would allow New York authorities to exercise jurisdiction over relator while he was in New Jersey. (Executive Law § 259-m.) The court notes also that the New York statute provides that all persons who are incarcerated out of State pursuant to the compact are entitled to all rights which they would have had in New York (Executive Law, § 259-n, subd 1, par [e]) and that New York can allow the New Jersey authorities to conduct a preliminary parole revocation hearing (Executive Law, § 259-o, subd 3). The majority is apparently of the belief that the existence of the compact and the statutory procedures contained therein place petitioner within the “convenience and practical control” of the New York State Board of Parole. *20 While such an analysis is, at first blush, appealing, it cannot withstand close scrutiny.
First, in order for the New York State Board of Parole to retain jurisdiction over a parolee who has been jailed in a sister State, the statute requires that the parolee be held in a “compact institution.”[2] (Executive Law, § 259-n, subd 1, par [d].) Further, the portion of the statute which would extend to a New York parolee, in an out-of-State prison, the benefits of New York law, also expressly limits its effects to those prisoners in “compact institutions”. (Executive Law, § 259-n, subd 1, par [e].) There is no showing here that petitioner was being held in such an institution. Instead, it seems plain that he was held in New Jersey State prison due to his violation of New Jersey law. Inasmuch as relator was not within a “compact institution”, his argument that he should be accorded the benefit of the compact and related statutes carries little weight. (People ex rel. Pyclik v Smith, 78 AD2d 1008, supra; People ex rel. Copeland v Smith, 78 AD2d 1008, supra.)
It must be remembered that relator was not arrested in New Jersey for violation of his New York parole. He was arrested, instead, for a violation of New Jersey law. Had he been detained for his parole violation only, he might well have been placed in a “compact institution”, if in fact one exists in New Jersey, for his detention would have arisen by operation of the compact. However, where, as here, a parolee’s arrest and incarceration has nothing to do with his New York parole, the applicability of the compact, is at least questionable. Moreover, the compact itself expressly provides that a “sending state”, here New York, may not have access to its parolee in any case if that parolee is charged with or convicted of an offense in the “receiving state”, here New Jersey, without the consent of the “receiving state”. (ExecutiveLaw, § 259-m,subd 1,par [3].) Thus, while it is possible that New Jersey might have allowed New *21 York to reassert jurisdiction over relator, such co-operation was by no means assured and would not be required by the interstate compact.
Given the uncertainty of New Jersey’s response and the inability of the New York authorities to demand its co-operation under the compact, the mere existence of the compact did not place relator within the “convenience and practical control” of the New York State Board of Parole. In our view, the earliest time at which such control could be asserted with any certainty was when relator was returned to New York on March 1, 1979. Since he received a preliminary parole revocation hearing within 15 days thereafter, the requirements of New York law have been satisfied.
Nor do we believe that the burden of establishing the inapplicability of the compact or the unco-operativeness of the “receiving state” should be placed on the Board of Parole. In our view, where, as here, a New York parolee is arrested in a “receiving state” for a violation of that State’s law, the effect of the interstate compact on the parolee’s availability, dependent as it is on a sister State’s goodwill, is so uncertain as to render the parolee beyond the convenience and practical control of the Board of Parole as a matter of law. Indeed, even if we were to assume that the “receiving state” would in most cases willingly co-operate, and interrupt the early stages of its own criminal process to afford the New York parolee a preliminary hearing within the 15-day time limit required by New York law, the co-ordination of effort required in the short time allowed surely makes the provision of a hearing much more inconvenient, if not completely impractical. Thus, while it is true that the Board of Parole must show that a New York parolee held in New York is beyond its control to justify its failure to comply with statutory time limits (People ex rel. Walsh v Vincent, 40 NY2d 1049, 1050, supra), the practical difficulties inherent in the provision of a hearing to a New York parolee incarcerated in an out-of-State prison for a crime committed in a sister State militate against placing the same burden on the Board of Parole in such cases.
The majority’s conclusion that relator was not afforded timely parole revocation hearings is also undercut by the *22 fact that any delay in such hearings is attributable to him. The statute which creates the strict time limits in which parole revocation hearings must be given states that, at least insofar as the 90-day time limit for a final hearing is concerned, such time limits may be extended if the parolee himself causes the delay. (Executive Law, § 259-i, subd 3, par [f], cl [i].) In this case, relator’s commission of several serious crimes in New Jersey and his resultant incarceration in New Jersey caused the delay in his return to New York. Thus, having caused the delay of which he now complains, he cannot assert it as a basis for dismissal of the parole revocation charges.[3]
Finally, in our view it can also be said that relator had no right to a hearing until his return to New York for it was only then that the parole revocation warrant was “executed” against him. The law requires only that a preliminary hearing be held within 15 days of the execution of the parole violation warrant. (Executive Law, § 259-i, subd 3, par [c], cl [i] ; see, also, People ex rel. Delrow v New York State Div. of Parole, 75 AD2d 324, swpra.) Here, the New York parole warrant did not become operative against defendant until his release in New Jersey. Thus, it was not executed until then and no right to a hearing arose prior to that time. We are mindful that no such delay in “execution” operates upon a parolee’s incarceration for the commission of an unrelated crime in New York. (Lindsay v New York State Bd. of Parole, 48 NY2d 883; Matter of Piersma v Henderson, 44 NY2d 982, cert den 439 US 1088.) This is so because in such a situation the parolee is at all times subject to the power and control of the State of New York. Thus, if New York is holding him, it matters little whether the State’s power to detain him is exercised through a parole detainer or his commitment on a second crime. The State which is holding him is the same State which must give him a parole revocation hearing. In this situation, New York is, of course, not allowed to play a shell game with the various detainers to avoid giving a parolee a hearing.
*23 Obviously, a completely different situation is presented where an operative criminal commitment is in force in New Jersey and a New York parole revocation warrant is merely waiting in the wings. In this situation, the New York detainer has no effect until the New Jersey proceedings have run their course. Hence, in this case, the New York detainer was at the very least dormant until relator’s release in New Jersey. Only at that time did it hold him. In our view, the mere fact that the detainer was physically sent to New Jersey at an earlier time is irrelevant to its time of “execution” in the legal sense. Thus, the instant warrant was not executed until relator’s return to New York and the hearings afforded relator were, therefore, timely.
Nor does the existence of the previously described interstate compact require a contrary view of the term “execution”. That statute, while it provides procedures for the return of parole violators, specifically contemplates the interruption of the process during the pendency of local criminal proceedings against a parolee in the “receiving state”, here New Jersey. During such proceedings, a parolee is held by virtue of the power of the receiving State which the compact recognizes as supreme. (Executive Law, § 259-m, subd 1, par [3].) Thus, while preparations or negotiations for the prisoner’s return to the “sending state” may be had in the interim, no “execution” of a parole warrant can be allowed without the consent of the “receiving state”. Thus, until such “receiving state” in fact acquiesces and consents to a retaking by the sending State, there can be no “execution” of a parole revocation detainer warrant under the compact.
Accordingly, for all of the above reasons, we believe the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Gabrielli and Fuchsberg concur with Judge Jones; Judge Jasen dissents and votes to affirm in a separate opinion in which Judges Wachtler and Meyer concur.
Order reversed, without costs, writ of habeas corpus sustained and relator restored to parole supervision.

. Some lower courts have expressed similar views on the question of whether a New York parolee in a Federal institution is entitled to an immediate hearing. (See People ex rel. Spinks v Dillon, 68 AD2d 368, app dsmd 48 NY2d 1025; Matter of Mullins vState Bd of Parole, 43 AD2d 382, app dsmd 35 NY2d 992; but see Matter of Higgins v New York State Div. of Parole, 72 AD2d 583.)

. By the terms of the compact, each State which is a party thereto must designate one of its penal institutions as a “compact institution” and incarcerate prisoners detained pursuant to the compact therein unless specific contractual arrangements to the contrary are made by the particular States involved. (Executive Law, § 259-n, subd 1, par [c].)

. It should be noted that incarceration in New York for an unrelated crime would not invoke the statutory extension. This is so because incarceration in New York causes no delay inasmuch as the parolee is continually available to the Parole Board.