THE PEOPLE OF THE STATE OF NEW YORK ex rel. CHARLES SPINKS, Appellant, v JOHN C. DILLON, as Sheriff of Onondaga County, et al., Respondents.

Fourth Department, June 1, 1979

### APPEARANCES OF COUNSEL

*Karl M. Rice* for appellant.

*Robert Abrams, Attorney-General (Anne Meadvin* and *William J. Kogan* of counsel), for Edward Hammock, respondent.

### OPINION OF THE COURT

HANCOCK, JR., J.

We hold that the requirement in Executive Law (§ 259-i,

subd 3, par [f], cl [i]) that parole revocation hearings be held within 90 days of the probable cause determination is subject to the limitation that the parolee must be within the practical control of the Parole Board.

Petitioner, who was on parole from a New York sentence, was convicted of a Federal offense and sentenced to a Federal correctional facility in Danbury, Connecticut. While petitioner was in jail in Wampsville, New York, awaiting transfer to the Federal facility, a parole violation detainer warrant was lodged against him based on the Federal conviction. He waived his right to a preliminary hearing and the following day was removed to the Federal facility. After he had served part of his Federal sentence, petitioner was placed in a Federal halfway house program in Syracuse, New York. He was then taken into custody by New York authorities on the pending parole violation detainer warrant. Final parole revocation proceedings were begun but before the hearing date petitioner applied for a writ of habeas corpus based upon respondent's failure to accord him a final revocation hearing within 90 days from his waiver of the preliminary hearing. The court below denied the application and petitioner has appealed. We affirm.

The court in *People ex rel. Walsh v Vincent* (40 NY2d 1049), cited by appellant, recognized the logical and necessary requirement that before a parolee may invoke his legal right to a prompt parole revocation hearing, he must be " 'subject to the convenience and practical control of the Parole Board' " *(People ex rel. Walsh v Vincent, supra,* p 1050, citing *Matter of Beattie v New York State Bd. of Parole,* 39 NY2d 445, 447; see *Matter of Zobrist v Smith,* 54 AD2d 1071, app dsmd 42 NY2d 1012). In *Walsh,* the relator while on parole had been arrested, convicted, and incarcerated in a New York City jail. He was not given a final parole revocation hearing until after his release from the local facility. The court held that his right to a prompt final revocation hearing had been violated and ordered him restored to parole. It found that the relator had at all times been "subject to the convenience and practical control of the Parole Board" because, although incarcerated in a city jail and not a State correctional facility, he had been continuously within the State and had, while in the city jail, received a prompt preliminary parole revocation hearing.

At the time of the decision in *Walsh,* parole revocation proceedings were governed by the Correction Law (§ 210 *et*

*seq.)* and 7 NYCRR Parts 1920, 1925. Correction Law (§ 212, subd 7) provided that a final parole revocation hearing must be held "at the first available opportunity." This provision, we have seen, was interpreted by the courts as being impliedly subject to the practical limitation that the parolee must be under the control of the Parole Board. Subsequent to the decisions in *Walsh* and *Beattie,* the functions of the Parole Board were transferred by statute from the Department of Correction to the Executive Department. The new legislation (Executive Law, § 259 *et seq.;* § 259-i, subd 3, par [f], cl [i]; L 1977, ch 904) included the requirement that a final parole revocation hearing be held within 90 days of the probable cause determination. Nothing in the wording of the statute or in the legislative findings and purpose evinces any intention to alter the established limitation on the right to a prompt revocation hearing imposed by the decisions in *Walsh* and *Beattie.* The Legislature must be assumed to have known of the existing judicial decisions when it changed the law (see McKinney's Cons Laws of NY, Book 1, Statutes, § 191). We hold, therefore, that the Legislature did not intend in enacting the new statute to alter the settled rule that before a parolee may invoke his legal right to a prompt parole revocation hearing, he must be subject to the practical control of the Parole Board.

The question here then becomes whether subsequent to his waiver of the preliminary hearing petitioner was subject to the practical control of the Parole Board. We hold that he was not. From the day after he waived his right to a preliminary hearing until the time he was placed in a halfway house in New York, petitioner was incarcerated in an out-of-State Federal correctional facility. There was no existing statutory or administrative mechanism by which the Parole Board could have effected the return of a parolee incarcerated out of State for the purpose of holding a revocation hearing. In this respect the case at bar differs from the "speedy trial" cases concerning prisoners brought to New York from out-of-State Federal prisons to face pending criminal proceedings. In those cases, the New York authorities could utilize the procedure in section 4085 of title 18 of the United States Code to obtain the production of the prisoners. Section 4085 of title 18 of the United States Code provides for the transfer to a penal or correctional institution within a State for the purpose of prosecution or sentencing of a prisoner who "has been in-

dicted, informed against, or convicted of a felony" in that State. This section plainly applies to a prisoner against whom a criminal action is pending and not to a prisoner charged with a parole violation. No decisions have been found in which section 4085 of title 18 of the United States Code has been extended to allow transfer of a prisoner for a parole hearing. Similarly, the Federal version of the Interstate Agreement on Detainers (US Code, tit 18, Appendix, § 2, art 1) may only be used to effect the return of a prisoner against whom "untried indictments, informations, or complaints" are pending.

Even if section 259-i (subd 3, par [f], cl [i]) of the Executive Law were not limited by the rule in *Walsh* and *Beattie,* we would have cause to affirm. The section includes a provision that the 90-day time limit for final parole revocation hearings may be extended "if an alleged violator, by his actions * * * precludes the prompt conduct of such proceedings." The actions of petitioner in committing a crime resulting in his incarceration in a Federal correctional facility and thus placing himself beyond the reach of the New York parole authorities clearly are actions precluding the prompt conduct by the authorities of any proceedings in New York affecting his parole status.

The judgment should be affirmed.

DOERR, J. (dissenting). The judgment of Special Term should be reversed. While on parole, on October 18, 1977 petitioner was arrested and charged with a Federal offense. On February 22, 1978, petitioner was found guilty of these charges after trial in United States District Court for the Northern District of New York. On April 13, 1978 he was sentenced to a term of imprisonment for a period of one year and one day, to be served at the Federal Correctional Facility in Danbury, Connecticut. On April 25, 1978 he was removed to Danbury. On April 24, 1978, while at the Madison County Jail, petitioner was charged by New York authorities with a violation of parole based upon the judgment of conviction in the District Court. On the same day he waived his right to have a preliminary hearing. Probable cause was then established. On November 15, 1978, seven months after petitioner waived the preliminary hearing, while residing at the Salvation Army in Syracuse in the Federal halfway house program he was taken into custody on a parole violation detainer warrant, and his final revocation hearing was scheduled.

Section 259 of the Executive Law is a fairly recent legislative enactment as chapter 904 of the Laws of 1977, effective January 1, 1978. This legislation removed the Division of Parole from the Department of Correctional Services and placed it in the Executive Department. Expressing the legislative and gubernatorial intent, the preamble to the legislation, in part, states the following:

"The legislature finds it is essential that the parole board be authorized to utilize the services of hearing officers to conduct hearings and recommend determinations to the board. The use of such hearing officers will enable the board to create an administrative appellate process and to place a greater emphasis on policy formulation and implementation. * * *

"It is the legislative intent that these organizational and substantive . changes will create an appropriate framework within which the parole system can arrive at individual determinations that are just and proper to the particular individual while at the same time consistent with the treatment of others similarly situated. By enhancing the operation of the parole process, these reforms should improve the administration of justice in this state." (L 1977, ch 904, § 1.)

The disposition of this appeal rests upon the interpretation of statute and regulation. Executive Law (§ 259-i, subd 3, par [f], cl [i]) provides: "Revocation hearings shall be scheduled to be held within ninety days of the probable cause determination. However, if an alleged violator requests and receives any postponement of his revocation hearing, or consents to a postponed revocation proceeding initiated by the board, or if an alleged violator, by his actions otherwise precludes the prompt conduct of such proceedings, the time limit may be extended." Similarly the regulations of the New York State Division of Parole (9 NYCRR 8005.17) provide: "Hearing schedules. (a) The final revocation hearing shall be scheduled to take place within 90 days of a determination that there is probable cause to believe that the alleged violator has violated the conditions of his release in an important respect, or within 90 days of the waiver of the preliminary hearing."

There is no authority in the statute to support the finding by Special Term that "Executive Law § 259-i (3)(f)(i) (McKinney's Supp., 1977-78) does not apply until the Petitioner is within the practical control and convenience of the State Parole authorities". *People ex rel. Walsh v Vincent* (40 NY2d 1049, 1050) and *Matter of Beattie v New York State Bd. of Parole* (39 NY2d 445), relied on by the majority were pre-

Executive Law (§ 259) cases, decided when the standard to be applied was "a prompt final parole revocation hearing". The statute has replaced this standard by directing a hearing "within ninety days of the probable cause determination" (Executive Law, § 259-i, subd 3, par [f], cl [i]).

I disagree with the finding of the majority that petitioner's actions placed him within the statutory exceptions of section 259-i (subd 3, par [f], cl [i]) of the Executive Law. His culpable action, insofar as the parole process is concerned, was the commission of a crime. His incarceration in a Federal correctional facility was the final consequence of his action. The two events were separated by a six-month time interval. Petitioner was subject to the mandate of the New York authorities from October 18, 1977, when the crime was committed, until February 22, 1978, when he was found guilty in the District Court. Certainly, he was "subject to the convenience and practical control of the Parole Board" during this time, a condition insisted upon by the majority. He remained in this position from the time of the jury verdict in February, 1978 until his sentence on April 13, 1978, and thereafter until he was transferred to Danbury, Connecticut, on April 25, 1978. By waiting until April 24, 1978 to charge petitioner with violation of his parole, when they knew he was to be incarcerated, respondents violated the spirit and the letter of section 259 of the Executive Law. Petitioner's conviction added nothing to the broad discretion with which the Parole Board is vested in making determinations on parole revocations (People ex rel. Dowdy v Smith, 65 AD2d 285 [HANCOCK, JR., J.]), except to make the revocation process easier. Utilizing the judgment of conviction on April 13, 1978 as the basis for the violation was a choice the board made. Indeed, they waited 11 days beyond this date. Nonetheless, having triggered the 90-day statute by serving the notice of violation on April 24, 1978 and establishing probable cause, the Board of Parole should not now be permitted to fashion exceptions to relieve them from the impact of clear and unambiguous legislation.

I would reverse the judgment of Special Term and grant the writ.

DILLON, P. J., SCHNEPP and MOULE, JJ., concur with HANCOCK, JR., J.; DOERR, J., dissents and votes to reverse the judgment in an opinion.

Judgment affirmed.