*12 OPINION OF THE COURT
Jones, J.
A parolee is entitled to a prompt final parole revocation hearing notwithstanding the circumstance that he is in the physical custody of the authorities of a sister State unless the Board of Parole shows that such a hearing cannot be held subject to its convenience and practical control.
In December, 1973 relator was sentenced in Supreme Court, Bronx County, to an indeterminate sentence having a maximum term of eight years. On December 23, 1976 he was paroled to New Jersey on a parole violation warrant issued by that State against him. He remained incarcerated in New Jersey until he was paroled in that State on April 18, 1977. Following his release, the New Jersey authorities also agreed to supervise his New York parole pursuant to the provisions of the Uniform Act for Out-of-State Parolee Supervision (Executive Law, § 259-m et seq.-, NJ Stat Ann, § 2A: 168-14 et seq.).
On May 8, 1978 relator was arrested in New Jersey on various charges and remained in custody in lieu of $125,000 bail. He was interviewed on May 31, 1978 at the Passaic County Jail by a New Jersey parole officer who prepared an arrest report dated June 5, 1978, a copy of which was forwarded to the New York authorities. The New-York authorities decided not to issue a parole violation warrant at this time inasmuch as a high bail had been set and because of a request from the New Jersey authorities that New York take no action.
Relator was convicted in the New Jersey courts of statutory rape, desertion and nonsupport and sentenced to State prison. Again a copy of the report prepared by the New Jersey parole officer with respect to these convictions was provided the New York authorities. On December 15, 1978 a New York parole violation warrant was issued and lodged against relator as a detainer. A commissioner of the New York State Board of Parole reviewed relator’s case on December 26,1978 and declared him delinquent as of April 10, 1978.
When relator’s New Jersey imprisonment ended on March 1, 1979 the New Jersey parole authorities trans *13 ferred him forthwith to New York. A preliminary parole revocation hearing was held on March 16, 1979 at Biker’s Island, and a final revocation hearing was held on May 28, 1979 at which time relator’s parole was revoked.
In August, 1979 relator instituted the present proceeding for a writ of habeas corpus, contending that he had been denied his right to prompt parole revocation hearings. Special Term dismissed his petition, stating that relator’s entitlement to hearings did not accrue until he was released from New Jersey and that on that basis the hearings were timely held. The Appellate Division affirmed, two Justices dissenting. The majority concluded that, although the New York parole violation warrant was executed on December 15,1978, it was not until March 1,1979, when he was transferred from New Jersey to New York, that relator was “subject to the convenience and practical control of the Parole Board” (People ex rel. Walsh v Vincent, 40 NY2d 1049, 1050). The dissenting Justices disagreed with this latter conclusion and would have computed relator’s entitlement from December 15,1978. Inasmuch as there was no showing here by the Parole Board that relator was not subject to the “convenience and practical control” of the board although he was physically in the custody of the New Jersey authorities in the period from December 15,1978 to March 1,1979, there must be a reversal.
We start with the legislative mandate that a preliminary revocation hearing must be held within 15 days after the execution of the parole revocation warrant (Executive Law, § 259-i, subd 3, par [c], cl [i]) and that the final revocation hearing must be held within 90 days of the preliminary hearing (par [f], cl [i]). The application of these provisions is clear if the parolee is in custody in a facility within the jurisdiction of our State’s Parole Board. Problems of computation of the statutory time schedule have been seen to arise, however, when the -parolee is in custody but not within the jurisdiction of the Parole Board.
We first held that the right of the parolee to prompt revocation hearings was not diminished because he was being held on an unrelated criminal charge in an institution over which the Parole Board had jurisdiction, albeit the deten *14 tion there was only temporary and the parolee was held as a local prisoner (Matter of Beattie v New York State Bd. of Parole, 39 NY2d 445). Next we held that the right to prompt revocation hearings was not suspended because the parolee was lodged, not in an institution under the jurisdiction of the Parole Board, but in a local correctional facility. The criterion we again said was whether the parolee was “subject to the convenience and the practical control of the Parole Board” (People ex rel. Walsh v Vincent, 40 NY2d 1049, 1050, supra). We wrote in that case, “In the absence of a showing by the correctional or parole authorities that a particular local facility in the State is, for strong practical reasons, beyond its convenience and control, a situation difficult to bring to mind, a parolee is entitled to a prompt final parole revocation hearing” (id.).[1] We declined to follow the rule announced in Moody v Daggett (429 US 78) that a Federal parolee convicted of a Federal offense committed while on parole is not entitled to a prompt parole revocation hearing until he has been taken into custody as a parole violator at the expiration of the intervening sentence.[2]
We turn, then, to apply to this case the principles declared in Walsh, namely, that a parolee is entitled to prompt revocation hearings if he is “subject to the convenience and practical control of the Parole Board”, and that the burden of showing that the parolee is “beyond its convenience and control” lies with the Parole Board. In view of the relative ease of interstate communication and transportation and the vitality of legal and practical interstate co-operation today we perceive no sufficient justification for laying down a per se rule that imprisonment in a sister State means *15 necessarily and always that the imprisoned parolee is not subject to the convenience and control of New York State parole authorities. The out-of-State aspect of such a situation, of course, will bear directly and significantly on the necessary showing to be made by the parole authorities; the determination, however, must necessarily depend on the circumstances of the individual case. Evidence of the reluctance or unwillingness of the correctional authorities in the sister State to co-operate in making appropriate provision for a suitable hearing or a demonstration that the hearing should be held within the State of New York and that, notwithstanding the co-operation of the authorities of the sister State, significant practical difficulty would be encountered in arranging for the presence of the parolee at such a hearing would suffice to meet the modest burden placed on the New York State parole authorities.
In the present case, no showing has been made by the Parole Board beyond submission of proof that relator was incarcerated in the State of New Jersey during the period December 15, 1978 to March 1, 1979 and of speculative arguments which could be advanced in every instance of out-of-State imprisonment.
The States of both New York and New Jersey are parties to the interstate compact for out-of-State parole supervision (Executive Law, § 259-m et seq.; NJ Stat Ann, § 2A:168-14 et seq.). This compact, in addition’ to manifesting a general disposition and readiness to foster interstate cooperation in parole matters, contains explicit provisions for supervision by the receiving State over parolees of the sending State (Executive Law, § 259-m, subd 1, par [2]). As recited, in this case New Jersey authorities provided such supervision with respect to this relator, and copies of the New Jersey parole reports were furnished the New York authorities. Provision is made in the compact by means of which, with the consent of New Jersey officials, relator could have been returned for revocation hearings in New York (Executive Law, § 259-m, subd 1, par [3]). Further, the interstate compact authorized the Chairman of the New York Board of Parole to request the New Jersey officials to conduct a preliminary violation hearing while relator was incarcerated in *16 New Jersey, which would have had the same force and effect as a hearing conducted in New York (Executive Law, § 259-o, subd 3). Relator incarcerated in New Jersey had the same rights that he would have had if incarcerated or reincarcerated in New York, and the judicial and administrative officers of New Jersey were deemed to be the agents of the New York authorities (Executive Law, § 259-n, subd 1, par [e]).[3]
The record in this case contains only evidence of co-operation between the States of New Jersey and New York with respect to relator. In this circumstance, the New York parole authorities have tendered no proof either that they made a request for relator’s transfer for a hearing in New York or that they requested that a preliminary violation hearing be held in New Jersey. They offer only argumentative speculation as to what response the New Jersey officials might have made had New York requested a temporary transfer of relator to New York for the purpose of conducting parole revocation hearings here, or what response might have greeted a request that a preliminary violation hearing be held in New Jersey. Nor was any proof tendered that it would have been inappropriate to have the New Jersey authorities hold the preliminary hearing or that significant difficulties would have been encountered in arranging for relator’s presence at a hearing in New York. On this record it cannot be said that the New York State Board of Parole has met its burden of showing that relator was not or could not easily have been brought within its convenient and practical control during the period from December 15, 1978 to March 1, 1979. To characterize the present situation otherwise would be to denigrate the significance of the interstate compact to which all 50 States are parties and to ignore the failure of the Parole Board to advance other than hypothetical obstacles. (Cf. Matter of Higgins v New York State Div. of Parole, 72 AD2d 583.)
Accordingly, the order of the Appellate Division should *17 be reversed, the writ of habeas corpus sustained and relator restored to parole supervision.

. In the light of the relative positions of the State Board of Parole and the parolee, the ready access of the former to communication with its counterpart parole authorities in the sister State and the circumstance that the board’s convenience and practical control can always best be evaluated, at least initially, by the Parole Board itself, it is appropriate in this case, too, to place the burden of making the necessary showing on the Parole Board rather than the parolee.

. It is implicit in these decisions that we have not subscribed to the proposition that the parolee has waived or forfeited his right to prompt parole revocation hearings because it has been action of his own which has led to his subsequent incarceration (cf. Executive Law, § 259-i, subd 3, par [f], cl [i]) or that to establish his right to relief following denial of prompt hearings he must demonstrate that he has suffered actual prejudice.

. Respondent’s contention that the compact amendment has never been implemented by the New York State Board of Parole is raised for the first time on brief in our court and no proof in the record supports the contention. In any event, the Parole Board is not at liberty to ignore statutory mandate.