■ The People of the State of New York ex rel. Jack South, Appellant, v Edward Hammock, as Chairman of the New York State Board of Parole, Respondent. — Appeal from a judgment of the Supreme Court at Special Term, entered May 7, 1980 in Albany County, which denied a writ of habeas corpus. In 1973, petitioner was convicted of armed robbery and sentenced to 15 years in the New York State Correctional System. On October 14, 1976, he was paroled from the Green Haven Correctional Facility. While on parole he committed various crimes and ultimately pleaded guilty in United States Federal Court for the Eastern District of New York to two charges of bank robbery and one charge of escape from a correctional facility. As a result, the New York State Division of Parole lodged a parole detainer warrant with the Federal institution where the petitioner was incarcerated. On August 30, 1978, petitioner was given a final parole revocation hearing wherein petitioner pleaded guilty to 10 of 11 parole violations. A final decision revoking petitioner's parole was rendered on October 10, 1978. Respondent alleges that a copy of petitioner's parole revocation decision notice was mailed to petitioner on March 22, 1979. However, petitioner claims he never received a copy of the decision until May 9, 1979. Petitioner was permitted to file a late appeal to the Division of Parole Appeals Unit. The appeals unit affirmed the petitioner's revocation of parole on December 20, 1979. Thereafter, petitioner sought a writ of habeas corpus in Supreme Court, Albany County, contending that the Parole Board's eight-month delay in notifying him of its parole revocation decision denied him due process of law. Special Term denied the petition without reaching the merits holding that a writ of habeas corpus could not be utilized by petitioner while he was legally detained in a Federal penitentiary in Pennsylvania. This appeal ensued. Petitioner contends that while the writ of habeas corpus may have been an improper device for challenging the failure of the Parole Board to give him notice of its decision, Special Term should have treated his motion papers as an article 78 proceeding and thereby reached the merits of his contention that the eight-month delay was statutorily impermissible and should result in his return to probation status in this State. We agree. It is well established "that the remedy of habeas corpus is available only to one who is entitled to immediate release from the custody he is challenging" *(People ex rel. Malinowski v Casscles,* 53 AD2d 954, mot for lv to app den 40 NY2d 809). In the instant case, petitioner is not incarcerated within the New York State Correctional System, but is serving a sentence imposed upon him by Federal authorities. Thus, we are without authority to grant a

writ of habeas corpus. However, where, as here, an incarcerated petitioner does not seek release from confinement, but, rather, a determination that he is entitled to parole status because of the failure of the Parole Board to carry out a statutory mandate,* the wrongfully brought writ may be converted to an article 78 proceeding to decide the validity of such contention. (CPLR 103, subd [c]; cf. *People ex rel. Miranda v Henderson,* 54 AD2d 611.) In our view, Special Term erred in not perceiving that petitioner was seeking to review an alleged error affecting his future status in this State after release from Federal imprisonment, rather than an immediate release. Next, Special Term's denial of the writ cannot be justified by respondent's contention that conversion to an article 78 proceeding would be useless since petitioner cannot demonstrate prejudice since his incarceration ·will continue despite any ruling favorable to him. As the Court of Appeals recently stated in *People ex rel. Gonzalez v Dalsheim* (52 NY2d 9, 14, n 2): "It is implicit in these decisions that we have not subscribed to the proposition that the parolee has waived or forfeited his right to prompt parole revocation hearings * * * (cf. Executive Law, § 259-i, subd 3, par [f], cl [i]) or that to establish his right to relief following denial of prompt hearings he must demonstrate that he has suffered actual prejudice." Similarly, we conclude that lack of demonstrable prejudice does not foreclose review of a prisoner's claim of error following denial of prompt notification of the final revocation hearing result. Whether the board notified petitioner of its decision "As soon as practicable" (9 NYCRR 8005.20 [f]) is a factual issue which must be tried (CPLR 7804, subd [h]). Judgment reversed, on the law, and matter remitted to Special Term for further proceedings not inconsistent herewith. Mahoney, P.J., Main, Mikoll and Yesawich, Jr., JJ., concur.

Kane, J., dissents and votes to affirm in the following memorandum. Kane, J. (dissenting). The judgment of Special Term should be affirmed. Petitioner's sole complaint is that he was not informed of the decision to revoke his parole "As soon as practicable" (9 NYCRR 8005.20 [f]). Even if this proceeding were treated as one for article 78 review and petitioner succeeded in establishing a violation of the foregoing regulation upon remittal, there would be no basis or warrant for relief under the circumstances presented. At issue in *People ex rel. Gonzales v Dalsheim* (52 NY2d 9) was whether incarceration in a foreign jurisdiction so removed a parolee from the convenience and practical control of the Parole Board as to excuse compliance with the time limits governing preliminary and final revocation hearings (see Executive Law, § 259-i, subd 3, par [c], cl [i]; par [f], cl [i]). Concluding that the answer depended on the facts of the particular case, the Court of Appeals followed its earlier holdings dealing with in-State prisoners and made the observation, quoted by the majority, that redress for the denial of prompt *hearings* did not hinge on a demonstration of actual prejudice. Here, however, there is no assertion that the requisite hearings were

---

* Section 259-i (subd 3, par [f], cl [xi]) of the Executive Law states: "If the presiding officer sustains any violations, he must prepare a written statement, to be made available to the alleged violator and his counsel, indicating the evidence relied upon and the reasons for revoking or recommending the revocation of parole, and for the disposition made or recommended." The applicable regulation, 9 NYCRR 8005.20 (f), states, in pertinent part: *"Notification.* As soon as practicable after a violation hearing, the alleged violator and his attorney shall be advised in writing of the violation hearing decision * * * including the reason for the determination and the evidence relied upon."

conducted beyond the periods fixed by statute; petitioner simply maintains that the result was not communicated to him in a timely fashion. Inasmuch as the pertinent enactment does not specify when such notification must occur (see Executive Law, § 259-i, subds 3, 4), petitioner's argument, unlike those developed in *Gonzales (supra)* and its predecessors (cf. *People ex rel. Walsh v Vincent,* 40 NY2d 1049; *Matter of Beattie v New York State Bd. of Parole,* 39 NY2d 445), is wholly founded on due process considerations. Previously, unexcused and protracted delay in notification was addressed in a manner indicating that prejudice is a material element in deciding whether the revocation process violated concepts of fundamental fairness (cf. *People ex rel. Knowles v Smith,* 78 AD2d 975; *People ex rel. Weiner v Le-Fevre,* 78 AD2d 736; *People ex rel. Fowler v Warden of Ossining Correctional Facility,* 74 AD2d 885) and nothing contained in *Gonzales* suggests that the absence of prejudice should be ignored in cases of this nature. In this proceeding, the submissions reveal that petitioner was accorded and took an appeal from the decision revoking his parole (see Executive Law, § 259-i, subd 4; 9 NYCRR Part 8006). He does not contend that the alleged delay in receiving notice subsequent to the hearing prevented the taking of this administrative appeal or influenced its outcome. In fact, other than to point out the delay, it does not appear that he set forth any substantive grounds whatever for reversing the decision made at the hearing level. Although petitioner now claims that the terms of his Federal incarceration were adversely affected by the delay, he has still failed to identify any error which might arguably serve to overturn the underlying determination. Thus, assuming some unjustifiable delay took place, it is obvious that petitioner suffered no harm as a result.