THE PEOPLE OF THE STATE OF NEW YORK ex rel. EUGENE DELROW, Appellant, v NEW YORK STATE DIVISION OF PAROLE et al., Respondents.

First Department, June 25, 1981

### APPEARANCES OF COUNSEL

*Richard Greenberg* of counsel *(Donald H. Zuckerman* and *William E. Hellerstein,* attorneys), for appellant.

*Frederick R. Walsh* of counsel *(Shirley Adelson Siegel* and *Robert Abrams, Attorney-General,* attorneys), for respondents.

### OPINION OF THE COURT

BLOOM, J.

By memorandum, the Court of Appeals summarily reversed our determination in this matter and remitted it to us for reconsideration in light of its holding in *People ex rel. Gonzales v Dalsheim* (52 NY2d 9). In our original holding (75 AD2d 324) we determined that the relator was not, at the time of the filing of the detainer with New Jersey authorities, subject to the convenience and practical

control of the New York State Division of Parole *(People ex rel. Walsh v Vincent,* 40 NY2d 1049), and, by consequence, was not deprived of any of his statutory or constitutional rights.

Relator was convicted in the Supreme Court, Kings County, of rape, robbery and assault. On July 12, 1963 he was sentenced by that court to separate concurrent indeterminate terms, the longest of which was a sentence of not less than 10 years nor more than 20 years. After serving his minimum term he was paroled on January 23, 1973. Shortly more than one year thereafter, relator was arrested in New York City under an arrest warrant issued by the State of New Jersey. Upon being returned to that State he was indicted in Bergen County for assault, battery and related offenses. He was found guilty of those charges after trial and, on July 12, 1974, was sentenced to a term of imprisonment of from 10 to 15 years.

On April 8, 1974, some three months prior to the imposition of his New Jersey sentence, the then State Board of Parole of the New York State Correction Department issued a parole violation warrant which was lodged with the New Jersey authorities the following day.

On August 9, 1974, relator wrote to the New York State Board of Parole requesting resolution of his parole status so that any time which might be determined to be due for violation of parole could be served concurrently with his New Jersey prison sentence. On August 24, 1974, the Parole Board responded and informed relator that upon his return to this jurisdiction it would determine whether such credit would be given to him. Subsequently in January, 1976, the Legal Aid Society wrote to the Board of Parole on behalf of relator and a number of other prisoners lodged in the Rahway and Leesburg State Prisons in New Jersey demanding immediate parole revocation hearings. That demand was not complied with.

Relator was paroled on his New Jersey conviction on November 13, 1979. Pursuant to the warrant lodged on April 9, 1974 he was forthwith delivered to the New York authorities. On November 16, 1979, he was offered his pre-

liminary revocation hearing. He waived the hearing and thereafter commenced this proceeding.

This case differs in many salient respects from *Gonzales* (52 NY2d 9, *supra*). However, before we enter into any discussion of the differences between the two cases it is appropriate to note that relator bases his claim to relief on a statute (Executive Law, § 259-i, subd 3, par [c], cls [i], [iv]; par [f], cl [i]), which was not then in effect. At the time the warrant was lodged the right of a parole violator to a hearing was governed by section 218 of the Correction Law. That section provided for a single parole violation hearing only and read, in pertinent part: "The board of parole shall, as soon as practicable, give such parole violator an opportunity to appear personally, but not through counsel or others, before three members of such board of parole and explain the charges made against him. *Such appearance shall be either at an institution under the jurisdiction of the state department of correction or at such other place as may be designated pursuant to rules and regulations of the board.* The board of parole shall *within a reasonable time act upon such charges*, and may, if it sees fit, require such prisoner to serve out in prison or such other institution the balance of the maximum term for which he was originally sentenced calculated as provided herein or such part thereof as it may determine before again releasing such prisoner, on parole, subject to the provisions of the next section" (emphasis supplied).

By chapter 904 of the Laws of 1977 this and other provisions of the Correction Law were repealed and article 12-B of the Executive Law, which created the State Division of Parole and fixed its duties and responsibilities, was enacted to become effective January 1, 1978.

We turn then to the facts in *Gonzales (supra)*. There relator had been sentenced to an indeterminate term of eight years in December, 1973, by the Supreme Court, Bronx County. He was paroled on December 23, 1976. On the same day he was turned over to the New Jersey authorities under a parole violation warrant issued against him by that State. He remained incarcerated in New Jersey until released on parole on April 18, 1977. Following his release, New Jersey

undertook to supervise his New York parole under the compact for supervision of out-of-State parolees (Correction Law, § 224).[1]

Gonzales was again arrested in New Jersey on May 8, 1978. He was tried thereafter and convicted and sentenced to State prison. On December 15, 1978, the New York authorities issued and lodged a parole violation warrant. On March 1, 1979 his New Jersey sentence was concluded and he was forthwith transferred to New York pursuant to the warrant. A preliminary parole revocation hearing was held on March 16, 1979, under section 259-i (subd 3, par [c], cls [i], [iv]) of the Executive Law (which by then, had become effective) and a final revocation hearing was held on May 28, 1979 (Executive Law, § 259-i, subd 3, par [f]). As a result of these hearings, Gonzales' parole was revoked.

The Court of Appeals noted that New Jersey is a party to the compact for supervision of out-of-State parolees (NJ Stats Ann, §§ 2A:168-14—2A:168-25). Under the compact the sending State has the right to enter the receiving State for the purpose of retaking the parole violator. All formalities in connection therewith, including extradiction, are waived save only that when the sending State seeks to retake a parolee who has been committed to prison in the receiving State, or against whom a criminal charge is pending in such State, it may not do so without the consent of the receiving State (Executive Law, § 259-m, subd 1, par [3]; NJ Stats Ann, § 2A:168-14, subd 3).

Thus in *Gonzales* (52 NY2d 9, *supra*) the New Jersey authorities were required to keep the prisoner in a "compact institution" (Executive Law, § 259-n, subd 1, par [c]; NJ Stats Ann, § 2A:168-20) which the New York authorities had the right to enter for the purpose of removal or transfer to its jurisdiction (Executive Law, § 259-n, subd 1, par [d]; NJ Stats Ann, § 2A:168-21) subject only to the limitation that such removal or transfer was subject to the

1, The Court of Appeals reference is to section 259-m *et seq.* of the Executive Law. However, chapter 904 of the Laws of 1977, which placed these provisions in the Executive Law was not enacted until August 11, 1977 and became effective on January 1, 1978. The prior counterpart statute was section 224 of the Correction Law. For all practical purposes the two are the same.

approval of the receiving State in the event that the prisoner was serving a sentence in that State (Executive Law, § 259-m, subd 1, par [3]; NJ Stats Ann, § 2A:168-14, subd 3). Indeed, under subdivision 3 of section 259-o of the Executive Law, the chairman of the Division of Parole had power to authorize anyone with authority to conduct parole hearings under New Jersey law to conduct the preliminary hearing as agent for the New York State Division of Parole.

In this case, however, Delrow fell outside the ambit of the compact. His parole supervision was never transferred to New Jersey. At all times during the period of his parole he was under the direct authority and supervision of the New York State Division of Parole. Under section 218 of the Correction Law, which was the effective statute at the time of both of the requests for an immediate parole violation hearing, the then Board of Parole was required to afford Delrow the right to appear and explain the charges against him "as soon as practicable". Such appearance was to be "either at an institution under the jurisdiction of the state department of correction or at such other place as may be designated pursuant to the rules and regulations of the board." (Correction Law, § 218.) Certainly, the New Jersey prison facilities were not institutions under the jurisdiction of the New York State Department of Correction; and our attention has not been called to any rule or regulation which authorized the holding of such hearings outside the State. While local lockup facilities have been deemed to be within the constructive jurisdiction of the State *(People ex rel. Walsh v Vincent*, 40 NY2d 1049, *supra; Matter of Beattie v New York State Bd. of Parole*, 39 NY2d 445), that rule can have no application to out-of-State prison facilities.

Thus, there was no existing administrative mechanism by which the Division of Parole could effect the return of relator for a parole violation hearing *(People ex rel. Spinks v Dillon*, 68 AD2d 368). The only method for procuring the transfer and removal of relator to this State lay in extradition. It is true that New York and New Jersey are both parties to the Uniform Criminal Extradition Act (CPL art 570; NJ Stats Ann, tit 2A, ch 160, art 2, parts A, B). It is equally true that extradition statutes are

applicable to charges of violation of parole *(People ex rel. Pahl v Hagerty*, 262 App Div 45, aff'd 286 NY 654). However, when so used, they are normally limited in point of time to a period when the prisoner's release from the host State is imminent *(People ex rel. Samet v Kennedy*, 285 App Div 1116), a purpose served in this case by the lodging of the warrant with the New Jersey authorities.[2] Whether in the circumstances here indicated New Jersey would have yielded the relator prior to the expiration of his sentence or his placement on parole is seriously questionable. Moreover, cases interpreting the "as soon as practicable" clause of section 218 of the Correction Law have not required that a prisoner be extradited in order to hasten the hearing process *(Matter of Zobrist v Smith*, 54 AD2d 1071; *Matter of Burke v Ward*, 53 AD2d 748).

Upon the proof submitted to us we conclude that relator was not subject to the " 'convenience and practical control' " of the Division of Parole *(People ex rel. Walsh v Vincent*, 40 NY2d 1049, 1050, *supra; Matter of Beattie v New York State Bd. of Parole*, 39 NY2d 445, 447, *supra)* until such time as he was released from prison in New Jersey and transferred to the jurisdiction of the New York authorities on November 13, 1979. The offer of a preliminary hearing on November 16, 1979 was timely. The writ was, therefore, properly dismissed.

Accordingly, the judgment of the Supreme Court, Bronx County (HECHT, J.), rendered March 25, 1980 denying rela-

---

2. We do not question, nor can we, the holding in *Gonzales* (52 NY2d 9) that the lodging of the warrant with the New Jersey authorities constituted execution of that warrant, although that holding is at variance with our conclusion in our original determination in this case. This is particularly true in light of the Court of Appeals express rejection of *Moody v Daggett* (429 US 78) upon which we relied for our contrary view. However, we are constrained to point out that the view espoused in *Gonzales* poses problems not touched upon therein. To illustrate, since the lodging of the warrant constituted its execution, the relator was, from that time onward, constructively in the custody of the New York authorities. If he escaped prior to his surrender by New Jersey to New York, would that constitute a crime under New York law? (See CPL 20.20, subd 2, pars [a], [b].) If so, who would have the power to indict and where would the trial take place?

Additionally, the question arises—was the relator correct in assuming that an early hearing would enable him to serve his New York parole time due concurrently with his New Jersey sentence? In short, is a parolee in this State who commits a crime in another State entitled to an automatic "twofor"?

tor's application for a writ of habeas corpus and dismissing the proceeding is affirmed, without costs.

KUPFERMAN, J. P., BIRNS, MARKEWICH and FEIN, JJ., concur.

Upon remittitur from the Court of Appeals, judgment, Supreme Court, Bronx County, entered on March 25, 1980, unanimously affirmed, without costs and without disbursements.