■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. RICHARD MAHER, Appellant, v EVERETT W. JONES, as Superintendent of the Great Meadow Correctional Facility, et al., Respondents. — Appeals (1) from a judgment of the Supreme Court at Special Term (Viscardi, J.), entered September 3, 1981 in Washington County, which dismissed a writ of habeas corpus after a hearing, and (2) from an order of said court, entered December 31, 1981 in Washington County, which denied relator's motion to renew. In June, 1973, relator was released on parole from the Attica Correctional Facility where he had been serving concurrent sentences imposed by the Otsego County Court and Oneida County Court. Supervision of relator's parole was conducted by officials in the State of Connecticut pursuant to the interstate compact (former Correction Law, § 224; now Executive Law, § 259-m *et seq.*). In June, 1975, relator was arrested in New Jersey and subsequently extradited to Connecticut on charges of murder. He was declared delinquent, as of May 2, 1975, by the New York State Board of Parole and a parole violation warrant was filed with Connecticut authorities as a detainer. A preliminary hearing was held on the warrant by the Connecticut Board of Parole which found probable cause to believe relator had violated three conditions of his parole. Relator was convicted of the crime of manslaughter in February, 1976 and committed to the Somers Correctional Institution in Connecticut with the New York parole warrant lodged as a detainer. He was released by Connecticut authorities in March, 1981 and returned to the custody of the New York State Board of Parole. A final revocation hearing was held in July, 1981, which resulted in the revocation of relator's parole. Relator sought a writ of habeas corpus directing his release from imprisonment on the ground that he had been denied the right to a prompt final parole revocation hearing. Special Term dismissed the writ and denied relator's motion to renew, and these appeals ensued. When the parole violation warrant was filed as a detainer against relator in 1975, there was no fixed time within which a final revocation hearing was required. Rather, the Parole Board was required to hold such a hearing within a reasonable time, provided that relator was in a place subject to the convenience and practical control of the Parole Board (*Matter of Beattie v New York State Bd. of Parole,* 39 NY2d 445; see, also, *People ex rel. Walsh v Vincent,* 40 NY2d 1049). In *People ex rel. Gonzales v Dalsheim* (52 NY2d 9, 12), the court declared that "[a] parolee is entitled to a prompt final parole revocation hearing notwithstanding the circumstance that he is in the physi-

cal custody of a sister State unless the Board of Parole shows that such a hearing cannot be held subject to its convenience and practical control". Since we are not confronted here with the application of a newly enacted statutory provision or amendment or a newly recognized constitutional right, there is no merit to respondents' contention that *Gonzales* should be applied prospectively only. The *Gonzales* holding appears to be based upon the court's conclusion that the compact with other States for out-of-State parolees supervision (Executive Law, § 259-m *et seq.*) and the statutory procedures contained therein create a rebuttable presumption that a parolee incarcerated in an out-of-State prison is within the convenience and practical control of the New York State Board of Parole. This compact was in existence throughout the time frame of this case.* Accordingly, this case must be decided in light of *Gonzales* (see *People ex rel. Delrow v New York State Div. of Parole,* 52 NY2d 1057). The burden is on respondents to show that a hearing could not have been held subject to its convenience and practical control, and while this burden is a "modest" one, "speculative arguments which could be advanced in every instance of out-of-State imprisonment" will not suffice (*People ex rel. Gonzales v Dalsheim,* 52 NY2d 9, 15, *supra*). Respondents concede that despite relator's requests that a hearing be held, they made no effort to do so until he was released by Connecticut authorities and returned to New York. They contend that due to the unwillingness of Connecticut authorities to co-operate in making appropriate provision for a suitable hearing, any request or attempt to hold the hearing would have been futile. This claim is based upon one letter from Connecticut officials in which they refused to assist in arranging a parole revocation hearing for a particular New York parolee (not the relator), who was then being detained on charges in Connecticut. Respondents' hypothesis, based upon this single refusal in an unrelated case, is no better then the speculative arguments found lacking in *Gonzales*. Special Term's reliance on *People ex rel. Delrow v New York State Div. of Parole* (81 AD2d 391, mot for lv to app dsmd 54 NY2d 784) is misplaced, for there the court held that since the parolee's supervision had not been transferred to the sister State parole authorities, the interstate compact and, therefore, *Gonzales* were not applicable (see, also, *Matter of Vasquez v New York State Bd. of Parole,* 89 AD2d 734). Here, however, supervision over relator's parole had been transferred to Connecticut authorities pursuant to the compact. The judgment should be reversed, relator's writ should be sustained, and he should be restored to parole supervision. This disposition renders academic the appeal from the order denying the renewal motion. Judgment entered September 3, 1981, reversed, on the law and the facts, without costs, petition granted, and relator restored to parole under the conditions heretofore in effect. Appeal from order entered December 31, 1981, dismissed, as academic, without costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.

---

* Although section 259-m *et seq.* of the Executive Law did not become effective until January 1, 1978, its predecessor, section 224 of the Correction Law, was, for all practical purposes, identical.