OPINION OF THE COURT
Seymour Rotker, J.
This habeas corpus matter is presently before the court on a remittitur from the Court of Appeals. In a decision of February 10, 1983, the Court of Appeals (People ex rel. Posada-Osorio v Hammock, 58 NY2d 978) reversed the order of the Appellate Division, Second Department (89 AD2d 885) which affirmed the order of the Supreme Court, Queens County (Dubin, J.), entered July 21,1981, and the order upon reargument entered October 7,1981. The original judgment dismissed the writ of habeas corpus and denied the petition seeking vacatur of a parole violation warrant and restoration to parole status. The Court of Appeals (p 980) reversed and remitted “for determination *706 of whether the petitioner was within the convenience and practical control of the New York parole authorities while in Federal custody.”*
PACTS
On August 16, 1975, the petitioner was convicted in Supreme Court, Queens County, of the crime of criminal possession of a controlled substance in the third degree. He received an indeterminate sentence of one year to life. He was paroled on November 5, 1976 and deported to Columbia, South America, on condition that he not return to the United States. Petitioner was rearrested on August 3,1978 by Federal authorities and charged with a conspiracy to possess and sell cocaine. On September 8, 1978 a parole violation detainer warrant was lodged with Federal authorities by the New York State Parole Board (hereinafter called Parole) at the Metropolitan Correctional Center in Manhattan. A preliminary hearing was held on October 19,1978 at that facility and probable cause was found that petitioner had violated his parole status. A final revocation hearing was scheduled for January 28, 1979 but petitioner’s attorney did not appear on that date. The matter was rescheduled to February 20, 1979 at the request of petitioner’s attorney. .
The petitioner was convicted in the United States District Court, Eastern District of New York, on December 17, 1978 of possession with intent to distribute cocaine. He was sentenced on January 19,1979 to five years’ imprisonment plus a special parole térm of five years. On February 4, 1979 the petitioner was transferred from the Metropolitan *707 Correctional Center in New York to the Federal Correctional Facility in Miami, Florida, to serve his sentence. As a consequence, the final parole revocation hearing never took place on the scheduled date.
The petitioner, through his attorney, contacted parole authorities on several occasions in May, 1979 in an attempt to reschedule the final parole revocation hearing. The petitioner was informed by Parole that he would be offered a final revocation hearing only upon his return to New York. In a letter of July 9, 1979 petitioner’s attorney recontacted Parole and inquired into the possibility that “a person whose parole will obviously be revocated on the basis of a subsequent conviction and re-entry into the United States after the issuance of an order of deportation can admit to the specifications, waive the hearing in the matter and await the determination of the Parole Board as to any additional time Mr. Posada may have to do in connection with the State conviction.” He was informed by Parole in a letter dated August 15, 1979 that “At the present time State law does not permit a waiver of a final parole revocation hearing by a releasee. See generally, Executive Law, § 259 (i). Mr. Posada must, therefore, await his return to New York before the Board of Parole may make a disposition in this case.” A further communication between petitioner’s attorney and Federal authorities indicated that a Federal prisoner would be transferred to a State detention facility only for the purpose of a State criminal prosecution but not for parole revocation hearings. On June 17, 1981, some two years and four months after petitioner was transferred from the Metropolitan Correctional Center in Manhattan, Parole wrote to the superintendent of the Federal Correctional Center in Miami, Florida, requesting the transfer of petitioner to New York for a final hearing. No response to this inquiry was received.
Petitioner was paroled by "Federal authorities and he was returned to New York State on December 10,1981. He waived his right to a preliminary hearing on that date and a final revocation hearing was held on January 26, 1982.
It is respondent’s contention that there is no statutory or administrative mechanism under which Federal prison *708 authorities could have provided petitioner with a final parole revocation hearing. Numerous affidavits in support of the proposition that petitioner was not “within the convenience and control of the Parole Board” have been proffered. The petitioner has argued that procedures were extant whereby prisoners would be transferred to a Federal facility within a State requesting custody for the purpose of conducting a final parole revocation hearing. Petitioner alleges that respondent did not satisfy its burden of showing that the hearing could not be held. Moreover, petitioner asserts that he was at least subject to the convenience and control of the Parole Board when incarcerated at the Metropolitan Correctional Center and that a minimum amount of co-operation from the Federal authorities in delaying his transfer on February 4, 1979 would have assured a final hearing at that facility. Finally, petitioner asserts that an effective waiver of his appearance at the final hearing was legally tenable and would have obviated any of the present problems.
Section 259-i (subd 3, par [f], cl [i]) of the Executive Law provides that “[Revocation hearings shall be scheduled to be held within ninety days of the probable cause determination.” The mandates of the Executive Law are to be strictly construed (People ex rel. Levy v Dalsheim, 48 NY2d 1019). A parolee is entitled to a prompt final parole revocation hearing notwithstanding the circumstance that he is in the physical custody of the authorities of a sister State unless Parole shows that such a hearing cannot be held subject to its convenience and control (People ex rel. Gonzales v Dalsheim, 52 NY2d 9). The burden of showing that the parolee is or was beyond this convenience and control lies with correctional or parole authorities (People ex rel. Walsh v Vincent, 40 NY2d 1049). Affidavits provided by Parole must provide evidence of the reluctance or unwillingness of the correctional authorities in the sister State to co-operate in making appropriate provisions for a suitable hearing (People ex rel. Gonzales v Dalsheim, supra, p 15). General allegations of an inability to provide a hearing will not suffice and do not excuse the failure of the Parole Board to seek co-operation from a sister State with reference to petitioner (People ex rel. Delgado v Walters, 91 AD2d 1053).
*709 The ability of the authorities to provide petitioner with a prompt final hearing in this matter was rendered more difficult by the presence of petitioner as a sentenced prisoner in a Federal institution. However, under the mandate of Gonzales (supra), this fact does not relieve Parole of the responsibility of attempting to obtain the presence of petitioner for a final parole revocation hearing.
Upon review of the relevant facts and affidavits submitted by both sides, it remains unclear to this court as to whether a final parole revocation hearing can be provided to a New York State parolee serving a Federal sentence in a foreign State. See, however, Matter of Higgins v New York State Div. of Parole (72 AD2d 583), where the issue arose. In that case an application for a final hearing was made by petitioner. The warden of the Federal correctional facility in which petitioner was lodged indicated that upon a request by New York authorities, the petitioner would be transferred to the Metropolitan Correctional Center, which was a location “within the convenience and practical control of New York authorities.” (Matter of Higgins v New York State Div. of Parole, supra, p 583.)
Recent decisions have indicated that in order to satisfy their burden under Gonzales, Parole must seek co-operation from authorities in foreign jurisdictions where petitioner is lodged. General allegations of non-co-operation will not suffice. (People ex rel. Delgado v Walters, 91 AD2d 1053, supra; People ex rel. Horan v New York State Div. of Parole, 91 AD2d 1053.) In this regard it is noteworthy that Parole made only one attempt to obtain the presence of petitioner for a final hearing. All other requests for disposition were made through the efforts of petitioner’s attorney. All other proof in support of the proposition that petitioner was “beyond the convenience and control of the Board” is of a general nature and was prepared after the fact. It is doubtful that such a showing would suffice under the standard enunciated by Gonzales.
Assuming, arguendo, however, that there was no mechanism to provide petitioner with a prompt hearing while he was lodged in the Federal system in Miami, Florida, what was the effect of the attempted waiver of the right of petitioner to be present at the final hearing? Respondent *710 indicated to petitioner’s then attorney that State law did not permit a waiver of a final parole revocation hearing by a releasee. (See, generally, Executive Law, § 259-i.) The court has reviewed these sections of the Executive Law and finds nothing within their ambit which would preclude such a waiver. The right to be present at a trial is of a fundamental nature and is encompassed within the confrontation clause of the State and Federal Constitutions. (NY Const, art I, § 6; US Const, 6th Arndt; CPL 260.20.) However, the right to be present at trial may be waived in certain situations (People v Parker, 57 NY2d 136). A waiver of this right has been found in the criminal setting where the defendant voluntarily absents him/herself from court control (People v Epps, 37 NY2d 343, cert den 423 US 999).
A parolee too, may waive the right to be present at a final parole revocation hearing by refusing to attend (People ex rel. McFadden v New York State Bd. of Parole, 79 AD2d 952, app dsmd 54 NY2d 751). The validity of any waiver turns upon whether one knowingly, voluntarily, and intelligently relinquished a known right (Johnson v Zerbst, 304 US 458, 464). A waiver of petitioner’s right to be present at the final hearing could have been effected provided it met these guidelines. This right was not diminished by the fact that petitioner was confined outside the State. In fact, section 8005.2 (d) of the New York Division of Parole Rules and Regulations (9 NYCRR) provides: “A certificate of conviction or commitment is prima facie evidence of an alleged violation. At a revocation hearing where the only alleged violations are acts which have resulted in criminal convictions, the parole officer and witnesses need not be present.” In view of the fact that the final hearing would have been nothing more than a mere formality and since the afore-mentioned statute provides for the nonappearance of the parole officer and witnesses when the alleged violation is based upon a criminal conviction, the court finds that the presence of petitioner could also be waived for purposes of the final hearing. Accordingly, the court finds petitioner was constructively within the convenience and control of the Parole Board at the point that his attorney contacted Parole and attempted to waive his client’s right to be present at the final hearing.
*711 There is also merit in petitioner’s argument that he was within the convenience and control of the Parole Board when he was lodged at the Metropolitan Correctional Center in Manhattan before being transported to the Federal institution in Florida. Given the difficulties extant with respect to the production of Federal prisoners in foreign jurisdictions for final parole revocation hearings, of which Parole was well aware, an attempt could have been made to delay petitioner’s transfer so that a final hearing might take place before petitioner departed from New York. It is not unreasonable to assume that the Federal authorities would have co-operated toward this end.
For the foregoing reasons, petitioner’s writ is sustained. The warrant is vacated and petitioner is to be restored to parole status.

 The Appellate Division decision was based largely upon the decision in People ex rel. Julio v Walters (88 AD2d 259) which declined to give retroactive effect to the decision in People ex rel. Gonzales u Dalsheim (52 NY2d 9). The July 21, 1981 decision of Honorable Bernard Dubin indicated that:
“A parolee is entitled to a prompt revocation if he is subject to the convenience and practical control of the Parole Board even if petitioner is incarcerated in an out-of-state facility. The burden of showing that the parolee is ‘beyond the convenience and control’ lies with the Board of Parole and that determination depends upon the circumstances of the individual case. (Gonzales v Dalsheim, 52 NY2d 9, 14-15).
“In this case, New York parole authorities made a request for petitioner’s transfer for the hearing in New York and the request was refused. The petitioner was, therefore, not under the convenience and control of the New York State Board of Parole. Petitioner has no right to a parole revocation hearing until his return to New York when the detainer warrant is executed against him.”
Thus, although this issue was addressed by the lower court, this court is compelled to address the issue again due tO'the directive of the Court of Appeals.