OPINION OF THE COURT
Arthur E. Blyn, J.
Application by petitioner for a judgment, pursuant to CPLR article 78, vacating a parole violation warrant, canceling any delinquency and restoring him to parole supervision on the grounds of respondent’s failure to afford petitioner a timely revocation hearing (Executive Law, § 259-i).
The issue presented is whether respondent has met its burden of showing that petitioner parolee is beyond its “convenience and practical control” so that petitioner’s right to prompt revocation hearings is abrogated as enunciated by the Court of Appeals in People ex rel. Walsh v Vincent (40 NY2d 1049) and its progeny (Matter of Vasquez v New York State Bd. of Parole, 58 NY2d 981; People ex rel. Gonzales v Dalsheim, 52 NY2d 9).
In 1978 petitioner was sentenced in Supreme Court, New York County, to a term of six years for criminal possession of a weapon in the second degree. He was released on parole on October 23, 1980. In January, 1982, he was *299 arrested in Washington, D.C. (D.C.) and subsequently in July of that year convicted of possession of morphine with the intent to distribute and sentenced to a term of 4 to 12 years.
In or about the end of March, 1982, respondent issued and lodged against petitioner, as a detainer, a parole violation warrant. Same was forwarded to D.C. authorities with a covering letter which reads, in relevant part, after reference to and paraphrasing of the holding in the Gonzales case (supra):
“In accordance with this decision, we hereby request that this individual be made available for return to New York State so that we may provide him with a preliminary revocation hearing and, if appropriate, a final revocation hearing pursuant to our statutory mandates.
“Please also note that if this individual is returned to New York State pursuant to this request, and should parole/conditional release thereafter be revoked, the releasee would be returned to a New York State correctional facility. Should that occur, this agency would be without statutory authority to effect the violator’s return to your jurisdiction.
“Please advise the undersigned in writing at the earliest possible date as to whether this releasee shall be made available for return to our jurisdiction. Should it be impractical to make such releasee available for return to this jurisdiction, kindly indicate the basis for such decision, as such information would be most helpful to us in any subsequent litigation that may arise in New York State regarding this matter.”
From April to October of 1982, respondent sent four following up inquiries to D.C. none of which made specific reference to the question of petitioner’s availability. To these inquiries D.C. authorities twice responded. On the first occasion they confirmed the particulars of petitioner’s conviction and sentencing and acknowledged the detainer warrant. On the second occasion they responded that there was no more information regarding petitioner and since he was ordered to a Federal designation they were closing the case.
*300 By letter dated January 28, 1983, petitioner requested respondent to make a final disposition of the warrant. There was no response from respondent.
Responding to an inquiry from petitioner’s counsel the D.C. Department of Corrections stated in a letter dated April 18, 1983, “We have not been contacted by [respondent] to make arrangements for a parole hearing for Mr. Butler”.
The statute, section 259-i of the Executive Law, requires a preliminary revocation hearing within 15 days after the warrant is executed (lodged) and a final hearing 90 days thereafter. No hearings have been had at bar. The Court of Appeals in the cases cited at the outset has made clear that a parolee’s right to a prompt revocation hearing is not diminished by his incarceration on other charges in another jurisdiction if he remained “subject to the convenience and practical control of the Parole Board”. In Gonzales (supra), the court reasoned: “In view of the relative ease of interstate communication and transportation and the vitality of legal and practical interstate co-operation today we perceive no sufficient justification for laying down a per se rule that imprisonment in a sister State means necessarily and always that the imprisoned parolee is not subject to the convenience and control of New York State parole authorities. The out-of-State aspect of such a situation, of course, will bear directly and significantly on the necessary showing to be made by the parole authorities; the determination, however, must necessarily depend on the circumstances of the individual case. Evidence of the reluctance or unwillingness of the correctional authorities in the sister State to co-operate in making appropriate provision for a suitable hearing or a demonstration that the hearing should be held within the State of New York and that, notwithstanding the co-operation of the authorities of the sister State, significant practical difficulty would be encountered in arranging for the presence of the parolee at such a hearing would suffice to meet the modest burden placed on the New York State parole authorities”. (People ex rel. Gonzales v Dalsheim, supra, at pp 14-15.) Further, the fact that the parolee is not being supervised by the other jurisdiction pursuant to the interstate com *301 pact does not change the standard applicable or the burden on the board. (Matter of Vasquez v State Bd. of Parole, supra.)
Simply stated respondent argues that the steps taken by it hereinabove outlined evince every effort on its part to afford petitioner a prompt hearing and demonstrate that under the circumstances petitioner was not within its “convenience and practical control”. This court does not agree.
With all the follow-up form correspondence, the only unequivocal request, if it can be so characterized, for the return of petitioner to New York is contained in the March, 1982 covering letter. The wording of the second of the above-quoted paragraphs therefrom, however, rather than evidencing a sincere and genuine effort by respondent to afford petitioner a hearing, strongly discouraged D.C. from even attempting to accommodate respondent by guaranteeing that if petitioner were sent here, and his parole revoked, he would not be returned to D.C. One could hardly characterize such stipulation as one engendering a spirit of co-operation. The perfunctory follow ups by respondent were thus meaningless.
Respondent failed to explore viable alternatives such as holding the hearing in D.C. Although the statement is made that New York hearing officers were not empowered to conduct such a hearing, no basis for such statement is proffered. Further, the record does not support respondent’s contention that D.C. showed no interest in returning petitioner to New York. D.C. responses were addressed to the pro forma inquiries made of it. Indeed, as shown by the April 18 letter, the D.C. Corrections Department considered that it wasn’t even contacted to arrange for a hearing for petitioner.
Under the foregoing circumstances the court concludes that respondent has failed to meet its burden and accordingly the petition is granted. The parole violation warrant is vacated, any delinquency canceled and petitioner restored to parole supervision.