■ THE PEOPLE OF THE STATE OF NEW·YORK ex rel. DORIAN McFADDEN, Appellant, v NEW YORK STATE DIVISION OF PAROLE et al., Respondents. — Judgment, Supreme Court, Bronx County, entered July 22, 1980, dismissing a writ of habeas corpus, affirmed. On June 16, 1977, petitioner was sentenced to five years for robbery in the second degree. On June 5, 1979, he was paroled. On September 25, 1979, he was arrested on a parole violation charge. In January, 1980, he was restored to parole because his final parole revocation hearing was not held within the statutory 90 days. Thus, it may be seen that petitioner is no novice to the processes of the criminal justice system, and in particular, to the process pertaining to revocation of parole. On February 20, 1980, petitioner was again arrested and a parole violation warrant was lodged against him. The final parole revocation hearing, after several adjournments, was held on May 29, 1980, approximately 87 days after the preliminary hearing. The record (including the transcript of the final revocation hearing) shows that petitioner on two prior occasions, to wit, April 15 and May 5, 1980, as well as on May 29, 1980, refused to attend the final revocation hearing scheduled for him. This consequence resulted from petitioner's declining to come forward or answer calls in the block at Rikers Island House of Detention

for Men. It is also noted that, prior to the initial original scheduled date of the final hearing (April 10, 1980), petitioner was advised in writing as to his rights in respect of such hearing. Such written notice states, in pertinent part: "If you are called to the hearing even though you have applied for an adjournment *you should appear* otherwise you may be deemed to have waived your appearance." At the final hearing it was concluded that petitioner waived his right to be present, and it was clearly and unequivocally demonstrated that petitioner had transgressed the conditions of his parole. On June 3, 1980, only two days after the expiration of the statutory 90-day period and some five days after the final hearing, petitioner brought this habeas corpus proceeding. In the original petition, petitioner conclusorily states that he was denied his right to a final revocation hearing. In the amended petition, his counsel states on information and belief that petitioner received no notice for a final hearing and was not produced for the final hearing. The absence of an affidavit by petitioner disputing the giving of written notice of final hearing or the efforts of the authorities to produce him at such hearing, amounts, in essence, to a failure to raise a meritorious issue as to notice and supports the finding of waiver on petitioner's part as to his presence at the final hearing. Accordingly, the record demonstrates the propriety of the dismissal of the writ by the Supreme Court. Common sense requires, *inter alia,* acknowledgment of petitioner's actions herein as a strategic decision to frustrate the timely holding of the final revocation hearing, which effort has proved unavailing. The right to be present at the final parole revocation hearing is subject to waiver (see *People v Epps,* 37 NY2d 343). Concur — Ross, J.P., Lupiano, Silverman and Yesawich, JJ.

Carro, J., dissents in a memorandum as follows: Petitioner is presently confined as a parole violator, following a final parole revocation hearing. On March 3, 1980, a preliminary revocation hearing had been held and probable cause found to hold petitioner for a final hearing. The final revocation hearing was scheduled for April 10, 1980 and petitioner was given written notice as to certain of his rights. On April 10, 1980, because petitioner was scheduled to appear in court on his pending criminal charges, the hearing date was changed to April 15, 1980. There is no evidence that petitioner was given notice of this adjournment. On April 15, the hearing was again postponed, to May 5, 1980, "because petitioner could not be found" by correction personnel at Rikers Island House of Detention for Men. Again, no evidence was offered to show petitioner received notice of this adjournment. On May 5, the hearing was adjourned to May 22, 1980 because "petitioner again could not be found". Petitioner was unable to appear on May 22, since on that day he was sentenced to a conditional discharge in Criminal Court, New York County. The hearing was then adjourned to May 29, 1980. There is no evidence that petitioner was advised of this postponement. On May 29, 1980, the petitioner's final revocation hearing was held *in absentia,* without counsel, and he was found by the hearing officer to be in violation of parole. This decision was subsequently affirmed by a parole commissioner and petitioner was ordered returned to prison until the maximum expiration of his sentence. The hearing officer relied on the hearsay testimony of two parole officers that on three occasions, May 29, 1980 (the date of the hearing), May 5, 1980 and April 15, 1980, "he is avoiding being produced for this hearing by not answering calls in the block, even though the officer [unnamed] states he is somewhere in the block amongst two or three hundred inmates." And, "He was in the dormitory or whatever, but he could not be found. He did not answer the call at that time." And, "[once] again, we were told by correction staff that the parolee was housed in the quarters, he couldn't be found or he didn't answer up to the call." Parole Officer Hoy then testified, "I would also like to point out that in the past

Dorian McFadden was a parole violator back in September of 1979 and he went through the hearing process back then. He was not given a timely hearing. He brought a writ charging that the Department did not give him a hearing within ninety days. So, he is quite familiar with the ninety day process. It would appear to me he is avoiding the hearing with the same intention in mind, to produce a writ." Based solely on this testimony the hearing officer then concluded, "notwithstanding the subject's absence the hearing will proceed in absentia on the basis of the information that has been provided, that he is voluntarily refusing to appear and also based on the testimony offered by Parole Officer Hoy that there seems to be a pattern of avoiding the hearing for the purpose of exceeding the ninety day limit." He did not consider the alternative of extending the time limit, pursuant to section 259-i (subd 3, par [f], cl [i]) of the Executive Law, which would have been far less prejudicial to petitioner's rights. While a parole revocation hearing is not a criminal trial, but is an administrative proceeding *(People ex rel. Piccarillo v New York State Bd. of Parole,* 48 NY2d 76), and the hearing officer need not follow the strict rules of evidence and any evidence offered may be accepted, "there must be a residuum of legal evidence to support the findings" *(People ex rel. Wallace v State of New York,* 70 AD2d 781). There was no such residuum on the issue of the petitioner's failure to appear. The evidence consisted completely of hearsay and legally unsupported speculation. This was an entirely unsubstantiated and prejudicial finding. It rests on a premise which would deny due process to petitioner because he previously had successfully litigated his right to due process. While it is entirely conceivable that petitioner may have been intentionally avoiding appearing at his hearing with the hope of repeating his previous coup, the evidence supporting this proposition is too scant and unreliable to justify the hearing officer's conclusion that petitioner voluntarily waived his fundamental right to be present at this hearing. This due process right is guaranteed to petitioner under both Federal and State Constitutions (US Const, 5th Amdt; NY Const, art I, § 6), statute (Executive Law, § 259-i), and a persuasive body of case law (see *Morrissey v Brewer,* 408 US 471, 489). A persuasive waiver of such right must be knowingly, voluntarily and intelligently made to comport with due process standards. *(Johnson v Zerbst,* 304 US 458, and, as that case noted, at p 464.)* "It has been pointed out that 'Courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights'. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." The first prerequisite to waiver is knowledge, and evidence of notice of petitioner's adjourned hearing is glaringly absent, despite respondent's bald inference that petitioner's receiving written notice of his "right to a hearing and other rights" constituted actual or even constructive notice of the actual hearing date. Inasmuch as one cannot waive the right to be present if he is not aware that his presence is required, petitioner cannot be said to have been given opportunity to do so. Once having determined that the right to be present at a parole revocation hearing is a matter of due process *(Morrissey v Brewer, supra),* the waiver of that right logically becomes governed by the same principles as the waiver of the right to be present at a criminal trial. Respondent, however, argues that the due process requirements for a valid waiver are not applicable to parole revocation hearings, because they are administrative proceedings, as held by *People ex rel. Piccarillo v New York State Bd. of Parole* (48 NY2d 76, *supra).* Respondent's reliance on that case for supportive authority is unpersuasive, however, since the court extends the following caveat (p 80): "Although parole revocation hearings are classified administrative proceedings, courts must nonethe-

less remain sensitive to the serious, if not irreparable, consequences which may befall a parolee if the charges of misconduct are sustained by the Board of Parole. Indisputably, '[w]hen all the legal niceties are laid aside a proceeding to revoke parole involves the right of an individual to continue at liberty or to be imprisoned. It involves a deprivation of liberty as much as did the original criminal action' ". Petitioner's absence from the hearing is not adequately justified and respondent's explanation raises more questions then it resolves. If he "could not be found," how are we to know he was there at all? It is disturbing that an inmate at the Rikers Island House of Detention for Men, "could not be found" by the Department of Correction on several occasions, and that the method supposedly used to notify petitioner of the hearing (on the same morning as scheduled) was to call out his name to a group of 200 to 300 inmates, without a foundation being laid to show that he was actually present in the group or to show he was in a position to hear and respond. Is it not the responsibility of the Department of Correction to know the precise whereabouts of each inmate at any given moment? Is it not the responsibility of the Division of Parole, through the Department of Correction, to give written advance notice of a hearing and an adjourned hearing personally to appropriate inmates? The respondents' failed in their burden of producing petitioner for the hearing or of showing a valid waiver. While petitioner should have properly filed his own verified affidavit, as noted by the majority, that omission cannot serve to shift the respondents' burden to him, on the state of this record. Since this court has rejected the argument that a new hearing be held under such circumstances *(People ex rel. Johnson v New York State Bd. of Parole,* 71 AD2d 595), the judgment dismissing the writ of habeas corpus should be reversed, and petitioner restored to parole supervision.