ORLANDO TORRES ROSARIO, apelante, *v.* ALCAIDE del CENTRO DE DETECCIÓN de BAYAMÓN, apelado.

*Número:* AC-90-339          *Resuelto:* 24 de junio de 1993

*Zinia I. Acevedo Sánchez*, de la *Sociedad para Asistencia Legal*, abogada del apelante; *Jorge E Pérez Díaz, Procurador General*, y *Aida Ileana Oquendo, Procuradora General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Nos toca resolver por primera vez si bajo el debido proceso de ley es válido que se revoque judicialmente la libertad a prueba antes concedida a un acusado y se dicte sentencia en su contra, sin haber éste comparecido a la vista

correspondiente una vez se ha establecido la voluntariedad de su ausencia.

I

El 26 de enero de 1985 el apelante Orlando Torres Rosario, c/p Landi, fue denunciado por el delito de escalamiento agravado. Habiéndose determinado causa probable, fue arrestado y acusado de dicho delito. El apelante hizo alegación de culpabilidad y, en virtud de lo dispuesto en la Regla 247.1 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, el tribunal de instancia ordenó la paralización de los procedimientos sin dictar sentencia y concedió al apelante un período de 2 años de libertad a prueba sujeto a ciertas condiciones, entre las cuales figuraba participar en el Programa T.A.S.C. (*Treatment Alternatives to Street Crime*) para adictos a drogas. Posteriormente, representantes de dicho programa solicitaron al tribunal la extensión del período probatorio por 10 meses adicionales debido a que el apelante no había tenido un buen ajuste en el tratamiento. El tribunal concedió dicha solicitud y extendió el período probatorio por 18 meses adicionales. Así las cosas, el 13 de mayo de 1987 los representantes del programa T.A.S.C. informaron al tribunal que el apelante había abandonado el centro de tratamiento el 5 de mayo de 1987 sin aparente causa justificada. El 19 de mayo el foro a quo ordenó el arresto de Torres Rosario y señaló una vista para la revocación de la libertad a prueba, la cual finalmente se celebró el 11 de septiembre de 1987.

A dicha vista compareció el Ministerio Público, el Coordinador del Programa T.A.S.C. y la Sociedad de Asistencia Legal en representación del apelante, quien no compareció. El tribunal de instancia declaró con lugar una moción presentada por el Ministerio Público en la que se solicitaba la revocación de la libertad a prueba, dictó sentencia contra

el apelante imponiéndole una pena de 15 años de reclusión y ordenó su arresto e ingreso a una institución penal.

El 8 de septiembre de 1989, casi 2 años más tarde, se logró el arresto del apelante y se le ingresó en el Centro de Detención de Bayamón.

El 28 de septiembre de 1989 el apelante solicitó mediante moción una oportunidad para ser oído, y en la vista correspondiente celebrada el 20 de octubre de 1989 su representación legal cuestionó la validez de la revocación de la libertad a prueba otorgada a Torres Rosario, alegando que éste no había sido debidamente citado para la vista de revocación. El tribunal de instancia denegó la solicitud del apelante, aduciendo que era improcedente entrar a considerar las actuaciones de un juez de igual jerarquía. Inconforme con dicha determinación, el 18 de diciembre de 1989 el apelante acudió mediante *certiorari* ante nos alegando que el tribunal de instancia había errado al resolver que no estaba facultado para conceder el remedio solicitado al amparo de la Regla 192.1 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Eventualmente declaramos no ha lugar tanto la petición original de *certiorari*, así como la reconsideración posteriormente presentada.

El 26 de enero de 1990 el apelante presentó una petición de hábeas corpus ante el Tribunal Superior, Sala de Bayamón, en la que solicitaba su excarcelación por alegadamente estar detenido de forma ilegal en virtud de un mandamiento de reclusión defectuoso. El 2 de febrero de 1990 se trasladó el recurso a la Sala de Guayama y el 12 de febrero se celebró una vista sobre dicha petición. Luego de escuchar los argumentos de ambas partes, el juez de instancia se reservó el fallo y manifestó que emitiría su dictamen por escrito. Luego de varios incidentes procesales, el 20 de marzo de 1990 el tribunal de instancia denegó finalmente la petición.

Inconforme con dicha determinación, Torres Rosario acudió ante nos el 30 de abril de 1990 mediante un escrito

de apelación. Poco tiempo después, el 9 de mayo de 1990, acudió nuevamente ante nos mediante una moción al amparo de la Regla 50 del Reglamento del Tribunal Supremo de Puerto Rico, 4 L.P.R.A. Ap. I-A, que en la que nos solicitó que se prescindiera del trámite relativo a la preparación, aprobación y certificación de la exposición narrativa de la prueba y se permitiera a las partes someter sus respectivos alegatos. El 25 de mayo de 1990 emitimos una resolución al efecto en la que ordenamos que se elevaran los autos del caso y que las partes sometieran sus alegatos.

Ambas partes comparecieron y presentaron sus respectivos alegatos. Con el beneficio de éstos, pasamos a resolver.

## II

En su alegato el apelante señala la comisión de los siguientes errores:

1. "Err[ó] el Honorable Tribunal de instancia al considerar que el apelante no se encuentra ilegalmente detenido mediante un mandamiento de reclusi[ó]n defectuoso y, por consiguiente, al declarar no ha lugar el recurso de Habeas Corpus y la solicitud de reconsideraci[ó]n."
2. "Err[ó] el Honorable Tribunal de instancia al negarse a expedir el auto Habeas Corpus solicitado y al no ordenar la inmediata excarcelación del Sr. Orlando Torres Rosario, quien se encuentra ilegalmente detenido en violación al debido proceso de ley." Alegato, pág. 5.

En esencia, el apelante alega que está detenido ilegalmente porque la revocación de su probatoria y la sentencia dictada por el tribunal de instancia fueron hechas en violación al debido proceso de ley por dos razones distintas, a saber: (1) que no se siguió el proceso requerido para la revocación de la libertad a prueba, y (2) que la revocación se hizo en su ausencia sin que se realizaran gestiones suficientes para procurar su comparecencia a la vista de lectura de sentencia.

Resolvemos que el apelante no tiene razón en ninguno de sus dos planteamientos. Veamos.

## III

*Procedimiento para revocación*

En nuestra jurisdicción, así como en la federal, se ha establecido un procedimiento para la revocación de las sentencias suspendidas o en probatoria, en reconocimiento de que el debido proceso de ley exige unas garantías mínimas al momento de privar a una persona de su libertad, aun cuando ésta sea condicionada. *Martínez Torres v. Amaro Pérez*, 116 D.P.R. 717 (1985); *Brewer v. Raines*, 670 F.2d 117 (9no Cir. 1982); *Gagnon v. Scarpelli*, 411 U.S. 778 (1973); *Morrissey v. Brewer*, 408 U.S. 471 (1972).

En *Martínez Torres v. Amaro Pérez*, supra, resolvimos que la cláusula del debido proceso de ley de nuestra Constitución requiere la celebración de una vista inicial *y, de ser necesario,* una segunda vista final.

La Ley de Sentencia Suspendida, según enmendada a la luz de los pronunciamientos hechos en *Martínez Torres v. Amaro Pérez*, supra, establece el procedimiento que ha de seguirse en los casos de revocación de sentencias suspendidas. 34 L.P.R.A. sec. 1026–1029. Ese procedimiento es aplicable a los casos de revocación de libertad a prueba conferida bajo la Regla 247.1 de Procedimiento Criminal, *supra.*

La ley aludida establece que si el Ministerio Fiscal interesa obtener una revocación sumaria de la probatoria y, por ende, el arresto y la encarcelación inmediatos, el probando es acreedor de una vista sumaria inicial para evaluar si existe causa probable para creer que ha violado las condiciones de su probatoria. 34 L.P.R.A. sec. 1029(1). En dicha vista, el probando tendrá la oportunidad de ser oído y de presentar evidencia a su favor. Podrá confrontar

al oficial sociopenal promovente, a testigos adversos y a estar asistido de abogado. 34 L.P.R.A. sec. 1029(2).

Luego de esta vista, *si es necesario*, el probando tendrá derecho a la celebración de una vista final. Esta segunda vista tiene como propósito dilucidar la revocación definitiva de la sentencia suspendida o en probatoria. 34 L.P.R.A. sec. 1029.

En el presente caso, el representante del Programa T.A.S.C. y el Ministerio Fiscal interpusieron mociones separadas en las que informaban al tribunal sobre las violaciones cometidas por el apelante durante su período probatorio y solicitaron que el tribunal hiciera los pronunciamientos correspondientes en ley. Ambas mociones fueron notificadas a la representación legal del apelante. A los ocho días de recibida la moción presentada por el Programa T.A.S.C., el tribunal ordenó la detención inmediata del probando y fijó una vista para considerarla en sus méritos, todo lo cual fue notificado a las partes con suficiente antelación. La resolución fue diligenciada al apelante infructuosamente, como veremos más adelante. En dicha resolución se especificó que se discutirían las alegaciones de la moción informativa del Programa T.A.S.C. notificadas previamente a las partes.

■ Es cierto que el tribunal no siguió el procedimiento de las dos vistas (sumaria inicial y final) para decretar la revocación de la libertad a prueba del apelado. Pero ello no constituyó un error que vicie la revocación. En primer lugar, la celebración de dos vistas no es requerido siempre, como ya hemos señalado. La propia Ley de Sentencia Suspendida dispone que sólo se celebre una cuando no es necesario celebrar ambas.(¹) Más aún, en este caso el

---

(¹) La Ley de Sentencia Suspendida dispone que el tribunal podrá consolidar ambas vistas si la primera se suspendiese a petición o por causas atribuibles al probando, a solicitud de su abogado o cuando el Ministerio Fiscal no solicite o no logre obtener el arresto y encarcelamiento del probando. En esta última circunstancia, la vista final de revocación definitiva se señalará mediante notificación y celebración al probando con no menos de treinta días de antelación. 34 L.P.R.A. sec.

tribunal procuró discutir las alegaciones contra el apelante en una vista. Llegado el día de la vista, se comprobó que el apelante estaba desaparecido y que no había posibilidad de localizarlo. El solo hecho de que Torres Rosario no se encontrara en el centro de tratamiento T.A.S.C. establecía causa probable para creer que el apelante había violado las condiciones de su libertad a prueba. No había necesidad de celebrar una vista preliminar para determinar si existía o no causa probable. *Owens v. Risley*, 702 P.2d 1 (Mont. 1985); *Chilembwe v. Wyrick*, 574 F.2d 985 (8vo Cir. 1978); *State v. Bly*, 586 P.2d 971 (Ariz. 1978). Era razonable deducir que si esa era la condición del apelante, su comparecencia tampoco se produciría en una vista posterior, por lo que el tribunal procedió a hacer su dictamen a tenor con la Regla 247.1 de Procedimiento Criminal, *supra*, revocó la probatoria y dictó sentencia por el delito imputado.

Ante la situación de hechos que confrontó el tribunal, resultaba claro que era innecesaria la celebración de dos vistas, puesto que en una u otra se hubiera ordenado la revocación. En nuestra jurisprudencia, con base en la federal, ya habíamos anticipado que cuando el probando tuvo el beneficio de una vista definitiva, aunque no la preliminar, ello no es un error perjudicial. Se parte de la premisa que aun habiéndose celebrado la vista preliminar, de todos modos hubiera culminado en la revocación de la probatoria y, por lo tanto, no hay nada que proveer por vía de revisión judicial. El trámite posterior subsana el error procesal. *Martínez Torres v. Amaro Pérez*, supra, pág. 733 esc. 9; *Collins v. Turner*, 599 F.2d 657, 658 (5to Cir. 1979); *Lambur v. Chew*, 356 F. Supp. 751, 752–753 (E.D. Va. 1973); *State v. Morales*, 293 A.2d 672, 675 (1972). En el caso de autos hubo la providencia de una vista definitiva en la que se evaluaron las violaciones a la probatoria, las cuales conllevaban necesariamente la revocación. También hubo vistas posteriores al arresto y encarcelamiento en las que se

---

1029(3)(c).

cuestionó la validez de la detención del apelante. Se cumplió, pues, con el debido proceso sustancialmente.

## IV

### *La cuestión de la ausencia*

■ Ni la Ley de Sentencia Suspendida ni nuestra jurisprudencia sobre el particular proveen normas específicas para situaciones de revocación de probatoria cuando el probando está *ausente*, distinto a lo que sucede en la generalidad de las jurisdicciones norteamericanas en las cuales la revocación en ausencia se admite porque el derecho a estar presente se considera renunciable.[2] Sin embargo, la Regla 243(a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, dispone que puede celebrarse juicio y dictarse sentencia en ausencia del acusado luego de que se determine que su incomparecencia es voluntaria. Siendo así en un procedimiento criminal ordinario en el cual el rigor constitucional es mayor, no vemos impedimento alguno para que se revoque una probatoria y se dicte sentencia en ausencia del probando *si se determina que su ausencia constituye una renuncia voluntaria a estar presente en ese momento*. Debe tenerse presente que el trámite de revocación de una sentencia suspendida o en probatoria no puede equipararse al procedimiento criminal presentencia; se trata aquí de un procedimiento más flexible en el cual el ámbito de garantías constitucionales es más limitado aunque no ajeno a las normas básicas contitucionales que protegen derechos fun-

---

[2] Contrario a la situación vigente en Puerto Rico, gran parte de los estados de la Unión Americana ha adoptado reglas o estatutos especiales para regir los procedimientos de revocación de probatoria en ausencia por estimarse que el derecho del probando a estar presente en tales procedimientos puede ser renunciado. También existe amplia jurisprudencia sobre el tema. Véanse, por ejemplo: *State v. Canady*, 606 P.2d 815 (Ariz. 1980); *State v. Nungesser*, 269 N.W.2d 449 (1978); *People v. Hall*, 480 N.E.2d 1387 (1985); *State v. Bly*, 586 P.2d 971 (1978); *People v. Liming*, 539 N.E.2d 871 (1989); *State v. Alegre*, 585 P.2d 1235 (Ariz. 1978); *People v. New York State Div. of Parole*, 435 N.Y.S.2d 589 (1981).

damentales como la libertad. *Martínez Torres v. Amaro Pérez*, supra, pág. 724.

■■■ La Regla 243(a) de Procedimiento Criminal, *supra*, permite que los procedimientos en ausencia del acusado se extiendan hasta el pronunciamiento de sentencia, luego de que se determine la voluntariedad de la ausencia del acusado. La determinación que así requiere la mencionada Regla 243 puede cumplirse una vez el tribunal queda enterado de las gestiones realizadas para localizar al acusado en la jurisdicción. *Pueblo v. Pedroza Muriel*, 98 D.P.R. 34, 37 (1969). En *Pueblo v. Lourido Pérez*, 115 D.P.R. 798 (1984), examinamos desde el punto de vista constitucional lo relativo al derecho de todo acusado a estar presente en todas las etapas del juicio. Citando a *Taylor v. United States*, 414 U.S. 17 (1973), a *Pueblo v. Bussman*, 108 D.P.R. 444 (1979), y a *Pueblo v. Colón Colón*, 105 D.P.R. 880 (1977), resolvimos que tal derecho a estar presente puede ser objeto de renuncia, indicando además que la renuncia del acusado puede manifestarse por la ausencia voluntaria del acusado y que la renuncia es voluntaria cuando el acusado es consciente de su derecho y obligación de estar presente, y carece de razón válida para ausentarse. *Taylor v. United States*, supra, págs. 19–20 esc. 3; *Johnson v. Zerbst*, 304 U.S. 458 (1938). Si puede renunciarse el derecho de estar presente durante el juicio y durante el acto de dictar sentencia de un procedimiento criminal ordinario en el cual el rigor constitucional es mayor, puede ser igualmente renunciable el derecho del probando a estar presente al momento de revocarse su probatoria cuando ya éste se ha declarado culpable del delito imputado y su renuncia es voluntaria. Véase E.L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1992, Vol. II, págs. 247–249 y 260–264.

En el caso ante nos, no cabe dudas de que la ausencia del apelado constituyó una renuncia voluntaria de su dere-

cho a estar presente en la vista de revocación. Veamos por qué es ello así.

■ La libertad a prueba que disfrutaba el apelante fue conferida en virtud de las disposiciones de la Regla 247.1 de Procedimiento Criminal, *supra*. Dicha regla, en lo pertinente, dispone lo siguiente:

> El tribunal, luego del acusado hacer una alegación de culpabilidad y sin hacer pronunciamiento de culpabilidad cuando el Secretario de Justicia o el fiscal lo solicitare y presentare evidencia de que el acusado ha suscrito un convenio para someterse a tratamiento y rehabilitación en un programa del Estado Libre Asociado de Puerto Rico, o privado, supervisado y licenciado por una agencia del Estado Libre Asociado, así como una copia del convenio, podrá suspender todo procedimiento y someter a dicha persona a libertad a prueba bajo los términos y condiciones razonables que tenga a bien requerir, y por el término dispuesto en el convenio para la rehabilitación del acusado el cual no excederá de cinco (5) años.
> En el caso de incumplimiento de una condición de la libertad a prueba, el tribunal podrá dejar sin efecto la libertad a prueba y proceder a dictar sentencia siguiendo lo dispuesto en las secs. 1026 *et seq.* de este título.

Al acogerse a los beneficios del Programa T.A.S.C. en virtud de la citada Regla 247.1, el acusado apelante suscribió un convenio conjuntamente con su abogado, el Ministerio Fiscal y el Coordinador del Programa en el que se obligó a cumplir con los términos y las condiciones estipulados, so pena de revocársele la libertad a prueba y dictarse sentencia en su contra por el delito imputado.

Mediante dicho convenio, el acusado se comprometió a ingresar en el programa de tratamiento y permanecer en el lugar que se le designara hasta su total rehabilitación; se obligó a cumplir con todas las normas y reglamentos del programa bajo apercibimiento de que cuando su conducta evidenciara que no estaba cooperando para su rehabilitación, podría interpretarse que estaba incumpliendo el convenio. En la sentencia que disponía la libertad a prueba se estableció, además, que cualquier cambio en el pro-

grama que fuera necesario para la rehabilitación del probando debía autorizarse expresamente por el tribunal a petición del funcionario de T.A.S.C.; que el probando permanecería dentro de la jurisdicción territorial del Tribunal Superior, Sala de Guayama, y que en el momento en que decidiera trasladar su residencia, debía solicitar permiso del Programa T.A.S.C. El probando firmó la sentencia comprometiéndose a cumplir con todas y cada una de las condiciones. Expresamente dicha sentencia decía que cualquier violación de ley o de las condiciones impuestas, conllevaría la revocación de la sentencia en probatoria y se procedería a dictar sentencia por el delito imputado.

Aunque el período probatorio estipulado originalmente fue de 24 meses (2 años), el Programa T.A.S.C. solicitó que tal periodo se extendiera por 10 meses adicionales en vista de que el apelante no demostraba progreso en su rehabilitación.([3]) El tribunal determinó extenderlo por 18 meses adicionales.

Antes de que se cumpliera el término original de probatoria de 2 años concedido, el apelante abandonó el centro de tratamiento luego de que representantes de dicho centro le advirtieran sobre las consecuencias legales que ello conllevaba. Al abandonar el centro, el apelante no informó su nueva dirección, desprendiéndose así de todo posible contacto con el programa y con el tribunal.

Al intentar notificársele, mediante diligenciamiento personal, de la vista que se celebraría para ventilar las alegadas violaciones a la probatoria, el apelante no pudo ser localizado a pesar de que se hicieron las gestiones necesarias al efecto.([4])

---

([3]) En varias ocasiones anteriores el apelante había abandonado el centro de tratamiento, demostraba una conducta hostil y poco propicia para su rehabilitación.

([4]) El alguacil que realizó el diligenciamiento declaró lo siguiente:

"Me personé al Edificio B, Apartamento 123 del Residencial Jardines de Montellano en Cayey y descubrí que allí no existe esa dirección. Seguí entrevistando personas residentes en el Residencial y me informaron que Orlando Torres residía en el Edificio A, Apartamento 122. Me personé a esa dirección y hablé con la Sra. Vilma E. Cartagena, que es la nueva residente allí. Me comuniqué con la oficina del Resi-

No hay duda de que las actuaciones del apelante constituyen graves violaciones a las condiciones de la libertad a prueba y que eran, según acordado en el convenio y lo dispuesto en la Regla 247.1, *supra*, causa suficiente para revocar la probatoria. El apelante tenía conocimiento de ello, no sólo porque lo decía el convenio que firmó luego de entrevistarse con el juez, su abogado y el coordinador de T.A.S.C., sino porque fue advertido de las posibles consecuencias legales de su actuación al momento de abandonar el centro de tratamiento. El apelante abandonó dicho centro sin causa justificada antes de extinguir su probatoria. La representación legal del apelante nunca ha alegado que éste tuviese autorización del tribunal o de los representantes del Programa T.A.S.C. para ausentarse del centro de tratamiento. Más importante aún, nunca se han refutado las alegaciones del Estado a los efectos de que el apelante había violado la libertad a prueba y que éste, al desaparecerse sin dejar dirección alguna, hizo imposible la notificación de los procedimientos en su contra. Su silencio y omisión de informar al tribunal y al programa cualquier cambio de domicilio, reflejan claramente su intención de evadirse y de evitar ser localizado. Prueba de ello es también la imposibilidad de efectuar su arresto sino hasta dos años después de emitida la orden. Ahora pretende el apelante levantar como defensa que no se le notificó de los procedimientos en su contra cuando él mismo evadió la custodia del tribunal con pleno conocimiento de las posibles consecuencias legales. Las actuaciones del apelante son prueba clara y suficiente de que su ausencia en los procedimientos ulteriores de su caso era voluntaria, consciente y sin razón válida alguna. Equivale, además, a una renuncia a estar presente en ellos. Al abandonar el programa y evadir su posible localización, el apelante se con-

---

dencial y me informaron que Orlando entregó ese apartamento el d[í]a 15 de mayo de 1987. También me dijeron que era posible que se haya ido para los Estados Unidos." Alegato, *Exhibit* XXI.

virtió en un prófugo de la justicia, renunciando así a las garantías y salvaguardas que le ofrece el sistema de justicia criminal. Véase *Pueblo v. Rivera Rivera*, 110 D.P.R. 544 (1980), y casos allí citados. No puede permitírsele ahora, como pretende, tomar ventaja y burlar la justicia diciendo que no se le notificó de los procesos en su contra. La imposibilidad de notificarle se debió no a la falta de diligencia del tribunal ni del Estado, sino a sus propios actos conscientes y voluntarios.

Según hemos señalado ya, el apelante conocía que el tribunal podía dictar sentencia en su contra si violaba las condiciones de la probatoria. Sin embargo, en su escrito alega que no tenía conocimiento de que se podía revocar la probatoria y dictar sentencia en su ausencia porque no consta en la minuta de 16 de junio de 1985 que fuera apercibido de esa posibilidad. Este argumento es inmeritorio. Por disposición de la Regla 58(b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, el tribunal, en el acto de la lectura de acusación, apercibe al acusado de que de no comparecer, podrán continuar los procedimientos en su contra incluso el pronunciamiento de sentencia, y de su incomparecencia ser voluntaria equivaldrá a una renuncia a estar presente. El argumento escueto de que dicha advertencia no aparece en la minuta no constituye prueba suficiente para derrotar la presunción de corrección de los procedimientos judiciales. Véanse: *Acosta v. Pagán*, 19 D.P.R. 459 (1913); *Ex parte Le Hardy*, 17 D.P.R. 1024 (1911); *Aramburu v. Córdova, Juez de Distrito*, 17 D.P.R. 948 (1911); *Río v. La Corte Municipal*, 16 D.P.R. 813 (1910). Cabe destacar que el juez de instancia interrogó al acusado individualmente antes de hacer su pronunciamiento de sentencia, que el apelante estuvo representado en todo momento por un abogado, y que en la vista de revocación de probatoria, la representación legal del apelante no objetó los procedimientos ni la imposición de sentencia en ese momento. No había razón por la cual el tribunal no pudiese

revocar la probatoria y dictar sentencia en ausencia, cuando se demostró una renuncia voluntaria y consciente a su derecho de estar presente. El sistema de justicia criminal brindó al apelante la oportunidad de rehabilitarse de su condición adictiva, acogiéndose a un programa sufragado con fondos públicos. Asimismo, le dio las garantías mínimas requeridas para hacer valer sus derechos. El apelante no quiso honrar su compromiso con el sistema y con la sociedad y prefirió actuar al margen de la ley. No puede ahora utilizar los mecanismos judiciales y legales para justificar sus propios actos contrarios a la ley y reclamar un derecho al que claramente renunció.

Bajo las circunstancias particulares de este caso, no se violó el debido proceso de ley en la revocación de la probatoria y la sentencia dictada contra el apelante. Cualquier defecto en el procedimiento de notificación o revocación quedó subsanado por las vistas celebradas luego del arresto en las que Torres Rosario tuvo oportunidad de cuestionar la validez del proceso de revocación de libertad y su detención.

Por las razones expuestas, *se confirma la sentencia del Tribunal Superior de Puerto Rico, Sala de Guayama.*

El Juez Asociado Señor Rebollo López concurrió sin opinión escrita. El Juez Asociado Señor Hernández Denton disintió con opinión escrita. El Juez Asociado Señor Alonso Alonso no intervino.

— O —

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

La ponencia mayoritaria concluye que la ausencia voluntaria de un probando a la vista para revocar su probatoria puede interpretarse como una renuncia a su derecho a estar presente. Estamos contestes con dicha norma, al

menos en un caso como el de marras en que el probando se acogió a los beneficios de la libertad a prueba luego de hacer una alegación de culpabilidad. No obstante, por entender que al revocar la libertad a prueba de Orlando Torres Rosario, el foro de instancia claramente desatendió las salvaguardas procesales reseñadas en nuestra decisión en *Martínez Torres v. Amaro Pérez*, 116 D.P.R. 717 (1985), y no tuvo ante sí prueba suficiente como para tener certeza moral de que el probando no pudo ser citado para la vista, disentimos.

## I

Para poder privar a un probando de su derecho limitado de libertad, hay que brindarle un debido procedimiento de ley con todas las garantías constitucionales aplicables a la etapa postsentencia. *Martínez Torres v. Amaro Pérez*, supra. A tono con los principios más elementales de justicia, el probando tiene derecho a que se le notifique de los hechos imputados que constituyen una causal de revocación de la probatoria. Tiene, además, derecho a prepararse para confrontar la prueba de cargo y presentar la propia. Finalmente, tiene derecho a que se le dé la oportunidad de estar presente en todos los procedimientos, representado por abogado si así lo desea. *Román v. Delgado*, 82 D.P.R. 598, 605–606 (1961).[1]

La decisión de esta Curia en *Martínez Torres v. Amaro Pérez*, supra,[2] añadió a las garantías básicas reseñadas

---

[1] Como todo derecho constitucional, el derecho a estar presente en la vista para revocar la probatoria es renunciable. La renuncia debe ser voluntaria y consciente. Tal es el caso cuando el probando desaparece sin informar al tribunal —que retiene jurisdicción sobre su persona— su nueva dirección. *Pueblo v. López Rodríguez*, 118 D.P.R. 515, 533 (1987); *Pueblo v. Pedroza Muriel*, 98 D.P.R. 34, 37–38 (1969).

[2] El procedimiento para la revocación de la probatoria surge del Art. 4 de la Ley Núm. 259 de 3 de abril de 1946, según enmendada, 34 L.P.R.A. sec. 1029. Pero el artículo vigente no es igual al que regía al momento en que ocurrieron los hechos de este caso. Se enmendó dicho artículo mediante la Ley Núm. 31 de 29 de mayo de 1986 (34 L.P.R.A. secs. 1027a y 1029) para incorporar los pronunciamientos de *Mar-*

unas garantías procesales más específicas. Conformó así el procedimiento local para la revocación de la probatoria, con las exigencias mínimas de la Constitución federal. Ésta exige que el tribunal celebre una vista preliminar para determinar si hay causa probable para creer que el probando ha violado las condiciones de su probatoria, y una vista final antes de la decisión definitiva que revoque la probatoria. La primera vista, sin embargo, no es necesaria si no se arresta ni encarcela al probando. Íd., pág. 725.

Bajo nuestra Constitución, *Martínez Torres v. Amaro Pérez*, supra, dispuso que la revocación sumaria de la probatoria requiere una vista sumaria inicial para determinar si existe causa probable para creer que el probando violó las condiciones de su probatoria. El magistrado tendrá discreción para citar o arrestar al probando para su comparecencia a la vista sumaria inicial. Después de esta vista, y de ser necesario, se celebrará una vista final. Ambas vistas podrán consolidarse en varias circunstancias, una de las cuales es cuando no se logre obtener el arresto del probando. En ese caso, además, se le citará con no menos de treinta (30) días de anticipación a la vista final.

Finalmente, *Martínez Torres v. Amaro Pérez*, supra, advierte que la notificación de la vista debe informar al probando de los hechos que se le imputan y que constituyen la violación a las condiciones de su probatoria. La decisión del foro de instancia deberá ser por escrito y reflejar las determinaciones de hecho básicas, la evidencia en que se basó y las razones para revocar la probatoria. Íd., págs. 727–729.

II

Según admite el propio Ministerio Público, el foro de instancia no siguió rigurosamente el procedimiento de las dos vistas. Celebró sólo una vista, en la cual no estuvo presente el probando y a partir de la cual decretó la revo-

---

*tínez Torres v. Amaro Pérez*, 116 D.P.R. 717 (1985), caso que rige la materia ante nos.

cación de la probatoria. De acuerdo con *Martínez Torres v. Amaro Pérez*, supra, sin embargo, el foro de instancia debió suspender la primera vista y citar al acusado para una vista consolidada de carácter final o celebrar la primera vista en ausencia para luego celebrar otra de carácter final, no más de treinta (30) días luego de citado el probando.

Ahora bien, si el foro de instancia pretendía dar carácter final a la primera vista celebrada en ausencia del probando, y prescindir de la segunda vista, la primera vista debió cuando menos ceñirse a los requisitos procesales mínimos que señalamos en *Martínez Torres v. Amaro Pérez*, supra. En el caso de marras, el foro de instancia hizo caso omiso de dichas salvaguardas.

La notificación que se intentara diligenciar a Torres Rosario no le informaba al probando de los hechos constitutivos de la causal de revocación de la probatoria. Se titulaba meramente "Citación del acusado para el acto de discutir moción". Tampoco el juez de instancia formuló por escrito su decisión, con las respectivas determinaciones de hecho básicas, una reseña de la evidencia en que se basó y las razones para revocar la probatoria que requirió *Martínez Torres v. Amaro Pérez*, supra. Ambas actuaciones claramente evidencian que el foro que celebró la primera vista en ausencia no consideró que fuera a prescindirse de una segunda vista en que se garantizaran al probando las salvaguardas mínimas de *Martínez Torres*, supra.

Tampoco satisface nuestra consciencia la prueba en que el magistrado se basó para dispensar de la presencia del probando en lo que sería la vista final para revocar su libertad a prueba. Descansó su decisión en el testimonio de un alguacil sobre lo que otro alguacil le dijo que fueron sus gestiones para localizar al probando. Las alegadas gestiones se limitaron a buscarlo en el residencial donde vivía y preguntar por el paradero del probando a vecinos del lugar y en la oficina que administraba el residencial. Allí alega-

damente averiguó que el probando se había mudado. Estas gestiones constaban en un documento firmado por el alguacil que las realizó, pero cuya firma ni siquiera aparece certificada bajo juramento o afirmación, ni contiene otra garantía de veracidad.

El foro de instancia, cuando menos, debió interrogar bajo juramento al alguacil que personalmente intentó diligenciar la citación, antes de determinar que las gestiones hechas para localizar al probando fueron suficientes como para dispensar de su presencia en la vista. Además, tampoco se advirtió previamente al acusado que, como consecuencia de su incomparecencia voluntaria, su probatoria podría revocarse en su ausencia. Por eso no puede decirse con certeza que su renuncia a su derecho constitucional a estar presente fuera voluntaria y consciente.

No debemos desatender la advertencia de *Pueblo v. Bussman*, 108 D.P.R. 444, 447 (1979):

> El hecho de que reconozcamos [el derecho a renunciar al derecho a estar presente] no debe interpretarse como que debe fomentarse esta práctica. *Es preferible la presencia del acusado durante todas las etapas del proceso y solamente debe dispensarse de ella en casos en que se demuestre que resultaría extremadamente gravosa su comparecencia,* que el Estado no la requiera para establecer su caso y que su ausencia no demorará los procedimientos. (Énfasis suplido.)

No vemos justificación alguna para que, en el caso de marras, no se haya celebrado una segunda vista con todas las salvaguardas procesales establecidas en *Martínez Torres v. Amaro Pérez*, supra. Como dicha vista nunca se celebró en un principio, no vemos impedimento para que ésta se hubiese celebrado eventualmente en presencia del probando, una vez se le arrestó. Al no requerir dicha vista, una mayoría de este Tribunal modifica *sub silentio* nuestros pronunciamientos en *Martínez Torres*, supra, y convalida de esta manera una crasa violación del derecho del

apelante a que no se le prive de su libertad sin el debido proceso de ley.

Por cuanto antecede, disentimos del resultado de este caso.